LANGDON *v.* UNION MUTUAL LIFE INS. Co.

*(Circuit Court, E. D. Michigan.* June 5, 1882.)

1. LIFE INSURANCE—FOR BENEFIT OF ANOTHER.

A person may insure his own life and make the policy payable to any one, though such payee has no interest in the life of the insured. Hence, where a policy was taken out upon the life of one, and made payable to another (who had no legal interest in it) *in case he survived the assured,* and there was strong evidence tending to show that the transaction was a mere wager, *held,* that it was properly left to the jury to say whether the policy was obtained in good faith, and not for the purpose of speculating in the hazard of a life in which the plaintiff had no interest.

2. SAME—PRIOR APPLICATION.

An applicant for a policy was asked the following question: " Has any application ever been made either to this or any other company, upon which a policy was not issued ?" *Held,* that a negative answer was not improper, although an application had been made which had not been finally passed upon by the company.

3. SAME—MISTAKE OF AGENT.

Where an applicant made a full statement of all the facts regarding the name of his usual medical attendant to the subagent who took the application, and the subagent, putting his own construction upon the facts, filled in the wrong name, it was held the company could not take advantage of the mistake.

This was an action upon a policy of life insurance upon the life of Augustus E. Baker, "for the sole and separate use and benefit of his brother-in-law, William W. Langdon. But in case of his previous death to revert to the insured." The facts in relation to this policy were substantially as follows: The agent of the defendant solicited Langdon, the plaintiff, to insure his life in his company. This application plaintiff declined, but said to the agent that he might go to

his brother-in-law, Baker, and get him to make an application for a policy, and the plaintiff would pay the premiums. Baker was the plaintiff's brother-in-law, but he had no other interest in his life. The court left it to the jury to say whether the policy was taken out in good faith by Baker, with a designation of the plaintiff as a person to receive the money, or whether it was intended by the plaintiff as a wagering contract upon Baker's life. The jury returned a verdict for the amount of the policy.

Motion was made for a new trial upon the ground of misdirection upon this and other points stated in the opinion.

*Moore & Canfield,* for plaintiff.

*H. M. Duffield,* for defendant.

BROWN, D. J. The policy in this case purported upon its face to be taken out by the insured upon his own life, but the evidence shows that it was taken at the suggestion of his brother-in-law, who sent the agent of the company to Baker, and paid all the premiums upon the policy. It was made payable to the plaintiff in case he survived Baker. Baker's life had previously been insured in other companies for plaintiff's benefit to the amount of $6,000. He had also made application to the Massachusetts Mutual Life Insurance Company for a policy of $3,000, which was rejected. Upon the trial, the question was left to the jury to say whether the policy was obtained in good faith, and not for the purpose of speculation in the hazard of a life in which the plaintiff had no legal interest. It was thought that the fact that the policy provided in express terms that in case of the previous death of the plaintiff it should revert to the insured, and hence that the plaintiff's interest was contingent upon his surviving Baker, was some evidence to go to the jury that the policy was taken out in good faith. It was certainly consistent with an understanding that the plaintiff wished to hold the policy during his life as security for the premiums, with a resulting trust in favor of Baker's wife, who was his own sister.

It is now well settled in the federal courts that a party cannot take out an insurance upon his own life and assign the policy, either contemporaneously with its execution or subsequently, to a person having no legal interest in his life, although the decisions of the state courts upon this point are conflicting. *Warnock* v. *Davis,* 104 U. S. 775; *Cammack* v. *Lewis,* 15 Wall. 643.

But there is no case, to my knowledge, which holds that a party may not insure his own life and make the policy payable to any one

he may select, though such person have no legal interest in his life. This point was first held in the case of *Campbell* v. *New England Mut. Life Ins. Co.* 98 Mass. 381. The policy in this case was taken out by Campbell upon his life, payable to him, his executors, etc., for the benefit of the plaintiff, in very nearly the same terms as are contained in the policy under consideration. The only substantial difference in the two cases is that the premium in this case was paid by the assured, and not by the beneficiary. So in the *Provident Life Ins. Co.* v. *Baum,* 29 Ind. 236, it was said to be "beyond question that a person has an insurable interest in his own life, and that he may effect such insurance, and appoint any one to receive the money, in case of his death during the existence of such a policy." This was an accident policy in similar terms. Although this exact question has not often been decided, the intimations of the courts are uniformly in the same direction. *Lemon* v. *Phœnix Mut. Life Ins. Co.* 38 Conn. 294, 302; *Guardian Mut. Life Ins. Co.* v. *Hogan,* 80 Ill. 35; *American L. & H. Ins. Co.* v. *Robertshaw,* 26 Pa. St. 189; *Fairfield* v. *N. E. Mut. Life Ass'n,* 51 Vt. 624; *Olmstead* v. *Keyes,* 11 Ins. Law J. 55.

Hence, the production of the policy, proof of payment of premiums, and of the insured's death, were sufficient to make a *prima facie* case for the plaintiff without evidence of interest in him. The facts, however, that the policy was taken out by Baker at the plaintiff's instigation, and that the premiums were paid by plaintiff, taken in connection with Baker's position in life, his total want of means, and the further fact that the plaintiff had obtained policies upon his life to the amount of $6,000 in addition to this, were strong evidence to show that the transaction was a mere wager upon his life, notwithstanding the fact of Baker's reversionary interest. The case was submitted to the jury in supposed conformity to the opinion of the supreme court in *Conn. Mutual Life Ins. Co.* v. *Shaffer,* 94 U. S. 67. See, also, *Ætna Life Ins. Co.* v. *France,* Id. 561; *Brockway* v. *Mut. Benefit Life Ins. Co.* 10 Ins. Law J. 763–769; *Wainwright* v. *Bland,* 1 Moody & R. 481; *Swick* v. *Home Life Ins. Co.* 2 Dill. 160. The mere payment of the premiums by plaintiff is not conclusive evidence that the policy was taken out by him. *Tuston* v. *Hardey,* 14 Beav. 232; *Armstrong* v. *Mut. Life Ins. Co.* 13 Reporter, 711. Were it an original question, I should be disposed to say that a policy taken out by one person for the benefit of another could no more be supported without evidence of legal interest in the beneficiary, than a policy

assigned to one having no interest in the life.    But a large number of cases seem to make this distinction, and I know of none which reject it.    Under all the circumstances, I think the question was properly submitted to the jury.

There was no error in the charge respecting the prior application made to the Massachusetts company.  In the application in this case the following question was asked:  "Has any application ever been made, either to this or any other company, upon which policy was not issued?"  The answer was, "No."  The evidence showed that upon the day before Baker made this application he signed a written application for a policy in the Massachusetts Mutual Life Insurance Company, and submitted to an examination by the surgeon of the company.  This examination proving unsatisfactory, the surgeon certified upon the back of the application that the risk was an unfit one. The application was then returned to the general agent of the company, who forwarded it to the home office of the company in Springfield, Massachusetts, where it was rejected.  If the question had been, "Has any application ever been made to this or any other company upon which a policy *has not been* issued," I should have had little difficulty in holding that the answer was false; but I think that there is a distinction between the words "was not" and "has not been" issued. I think a person of ordinary intelligence might answer no to the first form of the question, supposing that the company desired to know whether an application had been made and rejected.  But the application in this case had not been rejected.  The examining surgeon had no authority beyond his certificate as to the physical condition of the party examined.  Notwithstanding this certificate, the company might have issued the policy if it had chosen to do so.  It did not, in fact, reject the application until some time after the application in this case had been made to the defendant.  The question as put was somewhat ambiguous, and I think it contemplates, when fairly and reasonably construed, that the company desired to know whether an application had been made and rejected.  So long as the matter was still pending, it does not seem to me that a negative answer to the question was an improper one.

There was no error in the refusal of the defendant's request that Baker's statement of his age in the application was entitled to no greater weight than any other statement of his as to his age.   The request asked for a charge upon the weight of testimony.  Parties have no right to this.   The court may, in its discretion, comment upon the testimony, and even express an opinion upon it, and upon the weight

to which the several items of testimony are entitled, but counsel have no legal right to such instructions.

Baker did misstate the name of his medical attendant, and upon the first trial this misstatement was held fatal to a recovery; but upon the last trial it appeared that he made a full and fair statement of the facts regarding his medical attendant to Mr. Hitchcock, the person who took his application, stating that Dr. Loring had been his medical attendant in Providence, and up to the time he removed to Detroit; that since he had been here Dr. Book had treated him for a disorder of the nose, and, being evidently in some doubt as to what the correct answer was to the question, he left it Hitchcock to make the answer. He, it seems, put his own construction upon his language, and advised him, under that state of facts, to answer that Dr. Loring was his medical attendant.

It is claimed by the defense that the company is not estopped by this statement, because Hitchcock was not the agent of the company, but a subagent holding his appointment from the general agent of the company, Mr. Patton. Had Hitchcock been the general agent of the company, there can be but little doubt that the case would have fallen within the decision in *Ins. Co.* v. *Wilkinson*, 13 Wall. 232. While it is true that Hitchcock did not hold his appointment from the company, but from Mr. Patton, the contract between Patton and the company, produced upon the motion for a new trial, shows that it was contemplated that Patton should appoint subagents, whose duty it would undoubtedly be to take applications. Besides, it is a well-known custom of insurance agents to employ subagents of this kind to take applications, which are forwarded by the general agent of the company and upon which policies are constantly issued. Under such circumstances it seems to me, upon principle as well as authority, that the company ought not to say that the construction put by a subagent upon a statement made by the insured as to his medical attendant (a statement made in entire good faith) was false. I do not contend but that if the statement was false in fact and designedly so, or if it was made with intent to impose upon or mislead the company, the mere knowledge of the subagent would prevent the company from taking advantage of it. But where, as in this case, the applicant states all the facts, and the subagent puts his own construction upon them, I think the company is estopped. *Woodbury Savings Bank* v. *Charter Oak Ins. Co.* 31 Conn. 517; *Myers* v. *Mut. Life Ins. Co.* 3 Ins. Law J. 662; *Bodine* v. *Exch. Fire Ins. Co.* 51 N. Y. 117; *Van Schoick* v. *Niagara Ins. Co.* 68 N. Y. 434; *Strong* v.

*Stewart,* 9 Heisk. 137; *Furnas* v. *Frankman,* 6 Neb. 429; *Brown* v. *Ins. Co.* 45 Mo. 221; *Am. Ins. Co.* v. *Lesem,* 39 Ill. 314.

The motion for a new trial must be denied.

See *Brockway* v. *Mut. Ben. L. Ins. Co.* 9 FED. REP. 249.