Decided 28 March, 1904.

### BRETT v. WARNICK.

[75 Pac. 1061.]

REMEDY AT LAW—ACTION FOR INSURANCE.

1. A proceeding against an insurance company and the beneficiaries named in a policy issued to one deceased, seeking to enforce an agreement relating to the disposal of the sum due on the policy, and to prevent the payment to the beneficiaries named, is properly brought in equity, for there only can the rights of all the parties be both enforced and protected.

BENEFIT INSURANCE—SUBSTITUTION OF BENEFICIARY.

2. The lack of actual substitution as beneficiary in a benefit certificate, pursuant to the constitution and by-laws of a beneficial association, does not affect an agreement by which a person not named therein is to receive the insurance, and so deprive him of his equity to claim the same as against the beneficiaries named therein, where the association does not insist on it, and pays the fund into court to be awarded to the contestant entitled thereto.

INSURANCE—RIGHT TO ASSIGN INTEREST IN BENEFIT.

3. A member of a mutual insurance association, having the consent of the beneficiary named in the certificate, who has a vested interest therein by having made payments necessary to its continuance, may contract with a third person so as to transfer thereby an interest in the proceeds of such certificate, unless the contract is contrary to public policy or otherwise unlawful: *Independent Foresters* v. *Keliher*, 36 Or. 501, distinguished.

ASSIGNMENT OF INSURANCE AS A WAGERING CONTRACT.

4. Though a cousin of a member of a beneficial association has not a sufficient blood relationship to give him an insurable interest in the member's life, he may enter into an agreement with him, the beneficiaries consenting, and the rules of the order not inhibiting it, for an assignment of the certificate as security for any advance made on the faith of such agreement; and, if the transaction is conceived in good faith, and not with a view to avoid the inhibition of the law against wagering contracts, the agreement will be enforced.

From Multnomah : JOHN B. CLELAND, Judge.

This is an action by George R. Brett against Robert Z. and John W. Warnick and the Grand Lodge of the Ancient Order of United Workmen of Oregon to compel the delivery to plaintiff of a benefit certificate by the defendants Warnick, and to recover of the defendant lodge the sum named therein. In 1880 the Grand Lodge of the Ancient Order of United Workmen of Oregon issued to J. F. Warnick a certificate entitling him to participate in the beneficiary fund of the order to the amount of $2,000, payable at his death to his wife. On May 10, 1898, his wife having died prior thereto, Warnick procured the issuance of a new certificate substituting the defendants R. Z. Warnick and J. W. Warnick, his brothers, as the beneficiaries. Plaintiff alleges that the substitution was procured on the part of J. F. Warnick, in consideration that the beneficiaries would thenceforth pay the dues and assessments accruing to the order, and would provide him with a home during the remainder of his life ; that the beneficiaries accordingly paid such dues and assessments, and provided him with a home until October, 1900, when it was mutually agreed by and between the plaintiff, the assured, and the beneficiaries that the plaintiff, who was a cousin of the Warnicks, should henceforth provide the assured with a home, pay his dues

and assessments to the order, and at his death pay his funeral expenses, and, when convenient for him to do so, repay to the beneficiaries the amount of dues and assessments which they had previously paid to the order, being the sum of $90; and that in consideration thereof and upon repayment of said sum the defendants Warnick should deliver to plaintiff the benficiary certificate, and relinquish to him all their right and title thereto, and all benefits to be derived therefrom. Plaintiff further alleges that in pursuance of said agreement he brought the assured to his home, cared and provided for him, and paid all his dues and assessments to the order until his death, which occurred April 13th, 1903, and thereafter paid his funeral expenses; that prior to April 7, 1903, plaintiff paid to the defendants Warnick $50, and on that date tendered to them the balance due, being $40, on condition that they surrender to him the said beneficiary certificate, which they refused to do, and that they now claim that the sum named in the certificate is due from the order to them. Proof of death is shown, and a decree is prayed, requiring defendants Warnick to deliver the certificate to plaintiff, and that he recover from the order the sum named therein.

The answer puts in issue the allegations of the complaint touching the payment of the dues and assessments by the defendants Warnick subsequent to their substitution as beneficiaries and prior to October, 1900, the agreement between plaintiff and the Warnicks, and the performance thereof on the part of the plaintiff, and further alleges the conditions upon which the change of beneficiaries could be had under the constitution and by-laws of the order; that the assured never at any time since the date of the certificate in question changed the beneficiaries; that due proof of the death of the assured was made, and that the claim under the certificate was duly audited to the defend-

44 OR.——33

ants Warnick, payable $1,000 to each, and that the grand lodge had no notice of the claim of plaintiff until after the death of the assured, or until after the date of the filing of the death report. The defendant order answered that it had no beneficial interest in the fund, paid the same into court, and asked a discharge, and was, by order of the court, accordingly released. The contention being thus left to proceed between the plaintiff and the defendants Warnick, the latter moved for a decree upon the pleadings dismissing the complaint at the cost of the plaintiff, which motion was allowed, and a decree given and rendered accordingly, from which plaintiff appeals.

The case was submitted on briefs under the proviso of Rule 16.                                              REVERSED.

For appellant there was a brief over the names of *Danson & Huneke* and *James R. Stoddard* to this effect:

I. Specific performance of any legal contract can be enforced in equity, if it is fair and there is no adequate remedy at law, or if the legal remedy is of doubtful efficiency: 2 Story, Eq. Juris. (13 ed.) §§ 714–717, 728, and 759.

II. The action of claim and delivery, which has been suggested, is inadequate in that the certificate has no "value," hence damages would be merely nominal; Brett is not the legal owner until he has established the agreement; he is not entitled to the possession, for he agreed that they should keep it until the full sum of $90 was paid; whether it is "wrongfully detained" can only be established in equity; it is payable to the Warnicks, so, if delivered, plaintiff would still have to go into a court of equity with it; and, further, that action is local.

III. The fact that Brett was not made the beneficiary in nowise affects the agreement concerning the disposition of the money: *Pennsylvania R. Co.* v. *Wolfe*, 203 Pa. St. 269 (52 Atl. 247); *Swedish C. M. Soc.* v. *Lawrence*, 79 Minn. 124

(81 N. W. 750); *Benard* v. *Grand Lodge*, 13 S. Dak. 132 (82 N. W. 404); *Adams* v. *Grand Lodge*, 105 Cal. 321 (38 Pac. 914, 45 Am. St. Rep. 45); *Jory* v. *Supreme Council*, 105 Cal. 20 (45 Am. St. Rep. 17, 26 L. R. A. 733, 38 Pac. 524); *Grimbley* v. *Harrold*, 125 Cal. 24 (73 Am. St. Rep. 19, 57 Pac. 558).

The law concerning insurable interest applies only as between the order and the beneficiary, and does not apply to a third party contracting concerning the disposition of the money when obtained ; and especially is this true when the money has been paid into court by the order without raising the question.

IV. As to what amounts to an insurable interest, see *Martin* v. *Stubbings*, 126 Ill. 387 (9 Am. St. Rep. 630, 18 N. E. 657); *Fitzgerald* v. *Hartford L. & A. Ins. Co.* 56 Conn. 116 (7 Am. St. Rep. 288, 13 Atl. 673, 17 Atl. 411); *Lamont* v. *Grand Lodge*, 31 Fed. 177; *Connecticut Mut. L. Ins. Co.* v. *Schaefer*, 94 U. S. 457; *Mutual L. Ins. Co.* v. *Allen*, 138 Mass. 24 (52 Am. Rep. 245); *Collins* v. *Dawley*, 4 Colo. 138 (34 Am. Rep. 72).

Agreements of this character are enforced everywhere when the money emanates from an individual, and we can find no rule that they are not enforced when the money emanates from a society.

For respondents there was a brief over the name of *William Reid* to this effect:

(1) Plaintiff has an adequate remedy at law by an action of replevin for possession of the certificate, or by an action to recover the amount of the policy after it has been paid to the designated beneficiaries.

(2) The person named in the certificate of a mutual benefit association as the recipient of its bounty has no vested interest in the fund to be distributed until after the contingency insured against, but only an expectancy

which may be defeated by a change of beneficiary; and such change must be accomplished as required by the rules of the order: *Independent Foresters* v. *Keliher,* 36 Or. 501–506 (78 Am. St. Rep. 785, 59 Pac. 324, 1109); *Stringham* v. *Dillon,* 42 Or. 63 (69 Pac. 1020); *Supreme Conclave* v. *Capella,* 41 Fed. 1; *Hotelmen's M. B. Assoc.* v. *Brown,* 34 Fed. 11; *Supreme Lodge* v. *Nairn,* 60 Mich. 44; *Wendt* v. *Legion of Honor,* 72 Iowa, 682 (34 N. W. 470); *Highland* v. *Highland,* 109 Ill. 366; *Holland* v. *Taylor,* 111 Ind. 121 (12 N. E. 116); *Stephenson* v. *Stephenson,* 64 Iowa, 534; *Vollman's Appeal,* 92 Pa. St. 50; *Ireland* v. *Ireland,* 42 Hun, 212; *Rollins* v. *McHatton,* 16 Colo. 203 (25 Am. St Rep. 260, 27 Pac. 254); *Shuman* v. *A. O. U. W.* 110 Iowa, 642 (82 N. W. 331); *Clark* v. *Supreme Council,* 176 Mass. 468 (57 N. E. 787).

(3) The lodge does not waive compliance with its laws in respect to the manner of changing the beneficiaries by paying the money into court: *Independent Foresters* v. *Keliher,* 36 Or. 501 (78 Am. St. Rep. 785, 59 Pac. 324, 1109).

(4) A person not having an insurable interest in the life of another cannot take an assignment of a policy upon the life of the latter upon an agreement to pay the premiums. Such a contract is against public policy, and the fact that the rules of the order do not prohibit the transfer does not help the situation: *Price* v. *Knights of Honor,* 68 Tex. 361 (4 S. W. 633); *Cisna* v. *Shiebley,* 88 Ill. App. 385; *Stephens* v. *Warren,* 101 Mass. 564; *Warnock* v. *Davis,* 104 U. S. 775–778; *Thornburg* v. *Ætna Ins. Co.* 30 Ind. 682 (66 N. E. 922); *Franklin Life Ins. Co.* v. *Hazzard,* 41 Ind. 116 (13 Am. Rep. 313); *Amick* v. *Butler,* 111 Ind. 578 (60 Am. Rep. 722, 12 N. E. 518); *Milner* v. *Bowman,* 119 Ind. 448 (5 L. R. A. 952, 1 N. E. 1094); *Kessler* v. *Kuhns,* 1 Ind. App. 511 (27 N. E. 980); *Insurance Co.* v. *Sturgiss,* 18 Kan. 93 (26 Am. Rep. 761); *Insurance Co.* v. *McCrum,* 36 Kan. 146 (59 Am. Rep. 537); *Basye* v. *Adams,* 81 Ky. 368; *Helmetag's Admr.* v.

*Miller*, 76 Ala. 183 (52 Am. Rep. 316); *Insurance Co.* v. *Insurance Co.* 81 Ala. 329; *Roller* v. *Moore's Admr.* 86 Va. 512 (6 L. R. A. 136, 10 S. E. 241); *Ruth* v. *Katterman*, 112 Pa. St. 251 (3 Atl. 333); *Hoffman* v. *Hoke*, 122 Pa. St. 377 (1 L. R. A. 299, 15 Atl. 437).

MR. JUSTICE WOLVERTON, after stating the facts in the above terms, delivered the opinion of the court.

Two questions are presented: (1) Whether the complaint states a cause entitling plaintiffs to equitable relief, and (2) whether the agreement relied upon for recovery is subject to the objection that it is essentially a wagering contract, and therefore void, as in contravention of public policy.

1. As to the first, we are clear that the real purpose of the complaint is to require a specific performance of the alleged agreement to surrender the certificate upon the completed payment by Brett to the defendants Warnick of the sum of $90, which it is averred that they had formerly paid of the dues and assessments under an agreement by them with the assured, Brett having fulfilled, as he claims, the other conditions of his agreement in providing a home for the assured and paying his dues and assessments since forming the compact, and at the same time to prevent the order from paying the fund over to the defendants Warnick and to require its payment to the plaintiff. The relief is such that equity alone can adequately grant. An action against the defendants Warnick could not have met the purpose, as they had not as yet received the fund, and a judgment against them might prove unavailing if they were found to be insolvent; so that the remedy at law cannot be considered as adequate as the one adopted for equitable relief. The complaint is therefore not objectionable on the ground that it discloses a want of equity.

2. Nor does the lack of the actual substitution of plain-

tiff as beneficiary in the certificate in the stead of the defendants Warnick in the manner provided in the constitution and by-laws of the order for making such a change affect the agreement, and deprive the plaintiff of his equity, seeing that the company does not insist upon it, and has paid the fund into court to be awarded to the contestant entitled to it in the controversy, which is now wholly between the plaintiff and the defendants Warnick: *Pennsylvania Railroad Co.* v. *Wolfe,* 203 Pa. 269 (52 Atl. 247); *Swedish C. M. Soc.* v. *Lawrence,* 79 Minn. 124 (81 N. W. 756); *Benard* v. *Grand Lodge,* 13 S. D. 132 (82 N. W. 404).

3. It has been held that, where a person becomes a member of a mutual benefit association, under an agreement with the beneficiary named in the certificate that he, the beneficiary, shall pay all the assessments, and they are so paid accordingly, the beneficiary thus acquires a vested interest in the certificate, so that the member cannot afterward make another designation without the consent of the beneficiary: *Maynard* v. *Vanderwerker,* 30 Abb. (N. C.) 134 (24 N. Y. Supp. 932). This case, it should be noted, was reversed on appeal. The error, however, related solely to a question of fact, leaving the principle here announced unaffected: Id. 76 Hun, 25, 27 N. Y. Supp, 714. So, if a member, by valid contract, assumes to dispose of his interest in the beneficial fund of the order, virtually the proceeds of the certificate of insurance, and agrees not to change the beneficiary, in consideration of the payment by the beneficiary of all dues and assessments against such member, if not in conflict with the lawful conditions upon which the order grants the insurance, it is effectual as against the subsequent attempt of the member to annul it: *Clarke* v. *Police Ins. Board,* 123 Cal. 24 (55 Pac. 576). The doctrine appeals to us as reasonable and sound, and, being so regarded, there is nothing to hinder the member, with the assent of the beneficiary, from contracting with

a third party, whereby the latter may obtain a vested interest in the fund designated in the certificate, provided that the contract is not such as the law will not recognize because contrary to public policy. Such is the condition here, as shown by the allegations of the complaint. Brett's contract or agreement is not only with the member, but the beneficiaries designated in the certificate, or policy, it may be termed; and, if his allegations are true that he has acquired at least a substantial interest in the fund, if the agreement is otherwise lawful, his remedy in equity is clear. This result does not impinge upon the doctrine announced in the case of *Independent Foresters* v. *Keliher*, 36 Or. 501 (59 Pac. 324, 1109, 78 Am. St. Rep. 785). The question there presented was whether a change in the beneficiary had been accomplished aside from any contract or agreement between the parties, and depended upon whether there had been a substantial observance of the regulations in the constitution and by-laws of the order relative to the subject.

4. With relation to the second question presented, the defendants urge that Brett was without an insurable interest in the life of deceased, and hence that the alleged agreement was unlawful, as being contrary to public policy. It is beyond cavil that a person may take out a policy of insurance on his own life, and make it payable to whomsoever he pleases, he being the moving spirit, and assuming the responsibility of meeting the premiums or assessments. It would seem to follow logically from this that he might also, having effected a valid insurance upon his life, dispose of the policy, or assign it to whomsoever he desires, if the transaction is contrived in good morals, and not as a shift or cover for illegitimate purposes. But before one can be permitted to take out a policy of insurance upon the life of another for the former's benefit he must have an insurable interest in the life of the latter. If he

has not such an interest, and procures the policy notwithstanding, the law denominates it a "wagering contract," and, being in contravention of public policy, the holder will not be permitted to profit by his investment. "To have an insurable interest in the life of another," says Mr. May in his valuable work on Insurance, "one must be a creditor or surety, or be so related by ties of blood or marriage as to have reasonable anticipation of advantage from his life": 1 May, Ins. (3 ed.) § 102a. Speaking upon the same subject, in *Warnock* v. *Davis*, 104 U. S. 775, 779, Mr. Justice FIELD says with more elaboration : " It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and the child in the life of a parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured ; otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any

statute on the subject, condemned, as being against public policy." See, also, *Connecticut Mut. L. Ins. Co.* v. *Schaefer*, 94 U. S. 457; *Loomis* v. *Eagle L. & H. Ins. Co.* 6 Gray, 396.

The rule seems to be stated generally by a line of authorities that all the objections against taking out a policy of insurance upon the life of another, without an insurable interest in such a life, exist with equal force and potency against the holding of such a policy by mere purchase and assignment to another: *Warnock* v. *Davis,* 104 U. S. 775; *Franklin Life Ins. Co.* v. *Hazzard*, 41 Ind. 116 (13 Am. Rep. 318); *Kessler* v. *Kuhns*, 1 Ind. App. 511 (27 N. E. 980). In the latter case are collated all the principal authorities supporting the doctrine. Undoubtedly, if the policy was procured in the first instance by one without an insurable interest, its assignment to another without such an interest could not help the matter; as both transactions would be alike tainted with illegality. But where the policy is procured by one upon his own life, or by one upon the life of another in which he has an insurable interest, and therefore perfectly legitimate in its origin, another line of authorities holds that it may be assigned to one without such an interest, subject to the condition and restriction that it is not made as a cloak or cover for wagering purposes, or for mere speculation upon the life of the person upon whom the policy has been issued. It is easy to see how a contract, apparently valid in its inception, might be rendered invalid when coupled with a contract of assignment, where the purpose is eventually to procure a policy upon the life of another in whom there exists no insurable interest. For instance, a husband may take out a policy upon the life of his wife, in which, by all the authorities, he has an insurable interest. If now the policy be at once assigned to a third person without an insurable interest in the wife's life, on condition merely that he pay the premium, nothing more, with a view to

his obtaining the insurance at the death of the wife, the transaction would be indicative of an intendment to effect insurance contrary to public policy. It would be tantamount to procuring insurance indirectly which the law will not tolerate to be done directly, and the evil would be the same. A like inference would also be deducible where the consideration or insurable interest to support the assignment was merely nominal. It would be apparent that the transaction was intended as a cover only to conceal the real device—that is, to secure insurance upon the life of another without having at the time an insurable interest in such life—which is the vice that the law will not tolerate.

It does not necessarily follow, however, that, where a policy is taken out upon one's life for the benefit of another, and is assigned to a third party, who pays the premium, it stamps the transaction as a wagering device, but it depends upon the good faith of the transaction; that is, whether the policy was in fact intended to be what it purports to be, or whether the form was adopted as a cover for a mere wager: Bliss, Life Ins. (2 ed.) § 26. "The rule," says Mr. Justice EARL in *Olmsted* v. *Keyes*, 85 N. Y. 593, 600 "as gathered from these authorities, is that where one takes out a policy upon his own life as an honest and *bona fide* transaction, and the amount insured is made payable to a person having no interest in the life, or where such a policy is assigned to one having no interest in the life, the beneficiary in the one case and the assignee in the other may hold and enforce the policy if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming, and wagering policies. It follows, therefore, that one may, with the consent of the insurer, deal with a valid life policy as he could with any other chose in action, selling it, assigning it, disposing of it, and bequeathing it by will, and it has been well said that, if

he could not do this, life policies would be deprived of a large share of their utility and value." There is abundant authority for holding that a life policy valid in its inception may be assigned to one not having an insurable interest in the life of the assured when not used as a cloak for a wager or mere speculation in the life of another. The exigencies attending such a transaction are strongly set forth in *Murphy* v. *Red*, 64 Miss. 614, 618 (1 South. 761, 60 Am. Rep. 68), where the court say: "A man may have the best of reasons for wishing to dispose of the policy on his life. The exigencies of business or absolute necessity may require him to do so. He may have paid large sums in premiums and afterward become unable to pay more, and, if he is not allowed to sell or assign on the best terms he can make, the policy may be lapsed and lost. To impair the value and utility of his policy, or require him to lose it on the ground that, if he were to sell or assign it, the assignee or purchaser would have a motive to kill him, or that any sale or assignment he might be able to effect with one who had no insurable interest in his life would be tainted with the vice of gambling, is, as matters of law, extremely fanciful and unsatisfactory." Such, also, is the reasoning in *Bursinger* v. *Bank of Watertown*, 67 Wis. 79 (30 N. W. 290, 58 Am. Rep. 848). See, also, *Martin* v. *Stubbings*, 126 Ill. 387 (9 Am. St. Rep. 620, 18 N. E. 657); *Stevens* v. *Warren*, 101 Mass. 564; *Mutual Life Ins. Co.* v. *Allen*, 138 Mass. 24 (52 Am. Rep. 245); *Rittler* v. *Smith*, 70 Md. 261 (16 Atl. 890, 2 L. R. A. 844); and a comparatively recent case from Indiana (*Nye* v. *Grand Lodge*, 9 Ind. App. 131, 36 N. E. 429), ably and exhaustively considered, where the learned jurist announcing the opinion differentiates the Warnock, Hazzard, and Kessler Cases.

The reasoning of this line of authorities impresses us as cogent and sound, and we feel free to adopt the doctrine thus announced as more salutary, and better calculated to

serve the ends of justice, than that which seems to have been promulgated by the authorities herein first alluded to, if there is any real distinction when the cases are properly considered with reference to the facts that control them. Now, to apply the doctrine to the case in hand. Brett was a cousin of the assured, which was not a sufficient blood relationship to give him an insurable interest in the life of the latter. It was legitimate for him to take an assignment of the policy, the rules of the order not inhibiting it, for security for any advance made on the faith of it (*Gilman* v. *Curtis,* 66 Cal. 116, 4 Pac. 1094; *Insurance Co.* v. *O'Brien,* 92 Mich. 584, 52 N. W. 1012), and, if the transaction was conceived in good faith, and not with a view to avoiding the inhibition of the law against wagering contracts, the alleged agreement for the assignment of the policy by the assured, the beneficiaries consenting, would be valid to carry the entire interest in the policy to Brett. But, if not so contrived, it would, at any rate, be sufficient for Brett's reimbursement for all outlays made upon the faith of it, such as a reasonable expenditure for bringing the assured to his home at Spokane, providing him with a home, and the payment of the dues, assessments, and funeral charges, and the defendants Warnick would be entitled to the balance. The complaint is sufficient in either view, and it is a question of fact for the court to determine whether the alleged agreement falls under the ban of the law as a wagering contract, and therefore entitling Brett to recover only his outlay made in pursuance thereof, or whether the agreement was entered into in good morals, and in consequence he should recover the entire proceeds of the policy.

The decree of the trial court will be reversed, and the cause remanded for such other proceedings as may seem meet, not inconsistent with this opinion. REVERSED.