Motion to Strike 'Out Respondent's Additional Abstract, decided October 1, 1912.

On the Merits, argued July 6, decided July 22, rehearing denied September 9, 1913.

# MUTUAL BENEFIT LIFE INSURANCE CO. *v.* CUMMINGS.

(126 Pac. 982: 133 Pac. 1169.)

## ON THE MOTION.

### Appeal and Error—Record—Motion to Complete—Requisites.

1. Motion by respondent to compel appellant to incorporate additional papers in the record is properly overruled if it is not supported by affidavit showing incompleteness of the record, as required by Section 555, L. O. L.

### Appeal and Error—Record—Motion to Complete—Requisites.

2. Motion by respondent to compel appellant to incorporate additional papers in the record is properly overruled if it contains statement of a mere conclusion of law that omitted papers are a necessary part of the record, no facts being set forth in the motion or a supporting affidavit to sustain such statement.

### Appeal and Error—Record—Matters Properly Shown by.

3. A consent decree in interpleader discharging complainant insurance company on payment of insurance proceeds into court and directing defendants to interplead is not a proper part of the abstract of record on appeal involving merely a question as to which defendant was entitled to the fund, and hence motion suggesting diminution of the record on account of omission of the decree is properly overruled, and motion to strike an additional abstract of record containing such decree is properly sustained.

### Appeal and Error—Record—Additional Abstracts—Time for Filing.

4. Respondent having elected to suggest diminution of the record under Section 555, L. O. L., and failed through making an insufficient showing, is not entitled to proceed under Supreme Court rule No. 7 by furnishing an additional abstract, where the ten-day period fixed by the rule for such action has expired.

## ON THE MERITS.

### Interpleader—Life Insurance—Evidence—Sufficiency.

5. In a contest between claimants to a life policy, evidence *held* to show that the insured intended that the proceeds should be paid

to his mistress instead of his legal wife, the policy having named the mistress as beneficiary, though designating her as "wife."

[As to the right of interpleader, see note in 91 Am. St. Rep. 593.]

**Insurance—Life Insurance—Contracts—Construction.**

6. A life policy is a contract and should be construed so as to effectuate the intention of the parties, being treated as of a testamentary character.

**Names—Adoption of Name—Right to Adopt.**

7. A person may adopt or assume a different name from his true one and carry on business and make contracts under the fictitious name.

**Insurance—Life Insurance—Designation of Beneficiary.**

8. When a life policy is issued and delivered, naming a beneficiary without a reservation of power on the part of the insured to change, an irrevocable trust is created.

**Insurance—Life Insurance—Right to Proceeds of Policy.**

9. Where a man, who had deserted his lawful wife and was living and cohabiting with another woman, took out a policy in the latter's favor, designating her as "wife," the contract being wholly made for her benefit, she is entitled to the proceeds of the policy as against insured's true wife, for a person may insure his own life in favor of one having no insurable interest in his life, the fact that the beneficiary was named as his wife, and had adopted his surname not affecting her rights, for a person may adopt a fictitious name.

**Appeal and Error—Review—Findings.**

10. Findings in equity cases are of no persuasive force on appeal, Section 405, L. O. L., providing that such cases shall be tried anew.

On the Motion.

From Multnomah: Henry E. McGinn, Judge.

Statement by Mr. Justice Burnett.

This statement of facts is upon the hearing of the motion made by Evelyn M. Cummings to strike from the files the additional abstract of the respondent, Sophia J. Cummings.

According to the certified evidence in this case which, by Subdivision 1, Section 554, L. O. L., is made part of the transcript, it appears that one Harry A. Cummings insured his own life with the plaintiff company for the sum of $2,000, which, by the terms of the policy

66 Or.—18

issued by the company, was made payable to "Evelyn M. Cummings,.his wife." The insured, having paid the first semi-annual premium due on the policy, died. The proof of his death having been made to the company, it admitted its liability on the policy to the extent of $1,974.36. The plaintiff company soon afterward filed in the Circuit Court its bill of interpleader, in substance, as follows: After alleging its corporate character, it stated the issuance of the policy and the terms thereof, and, after making allowance for deductions on account of unpaid premiums and additions for current dividends, conceded its liability upon the policy to the person entitled thereto in the sum already mentioned, in which amount the complainant averred it had no interest and claimed no title. The death of Harry A. Cummings on August 23, 1911, was stated, and proof of his death admitted, and the complaint further alleges that about August 28, 1911, Evelyn M. Cummings, one of the defendants, claimed to the company that she was entitled to the money due on said policy; further that about September 8, 1911, Sophia J. Cummings also claimed that she was entitled to the money, and, still further, that Sophia J. Cummings, representing herself to be the duly appointed, qualified, and acting administratrix of the estate of Harry A. Cummings, deceased, claimed the amount due upon the policy to be coming to her as administratrix, and, again, that about November 23, 1911, one M. O. Wilkins made and filed a notice of attorney's lien with the plaintiff, claiming to have acted as attorney for Sophia J. Cummings, and asserting a lien upon the money in the hands of the company to reimburse him for his services in a sum not less than $250, and not more than $500. The complainant, alleging that it did not know to whom to pay the proceeds of said policy, disclaiming any interest therein whatever, brought into court the sum mentioned, and

prayed for a decree that the court require the defendants to interplead as to their rights to the money, and that the plaintiff be discharged from all further liability to pay the same.

For convenience of statement the parties to the suit will be, hereafter, called as follows: The plaintiff will be called the company; Evelyn M. Cummings, Evelyn; Sophia J. Cummings, Sophia; Sophia J. Cummings as the administratrix of the estate of Harry J. Cummings will be designated as the administratrix; and the defendant M. O. Wilkins will be designated by his own proper name.

Sophia filed an answer to the bill of interpleader, in which she admitted all the allegations thereof, except the statements that Evelyn had made a claim to the money, and that Wilkins had filed a notice of attorney's lien. She alleged "that she is entitled to the entire amount arising from the proceeds of said policy of insurance," and prayed the court to decree that the proceeds of the policy be paid to her. Evelyn filed an answer in which she admitted all the allegations of the bill, except the one stating that Wilkins had filed a notice of attorney's lien. She alleged affirmatively "that more than two years before the commencement of this action and during all of the time thereafter up to the time of the death of said Harry A. Cummings, as alleged in the bill of interpleader, she lived with the said Harry A. Cummings as his wife, and that said Harry A. Cummings represented to the public and claimed that said defendant, Evelyn M. Cummings, was his wife, and that she was, during all of said time, known by the said Harry A. Cummings, deceased, and the public, as the wife of Harry A. Cummings and accepted as such." She, in turn, prayed that the proceeds of the policy be paid to her. The administratrix also filed what she termed

a cross-bill, in which, without traversing any of the allegations of the bill, she challenged the claims of Evelyn and Wilkins, recited the claim of Sophia, and prayed that the money be paid to the administratrix. It does not appear from any data before us whether Wilkins filed an answer or not. By stipulation of all of the parties the court entered a decree of interpleader allowing the plaintiff to pay into court the net proceeds of the policy, and permitting it to go hence without further liability of any kind upon the policy. The court afterward heard the testimony, and entered a decree directing the payment of the proceeds to Sophia and disregarding the claim of Evelyn, Wilkins, and the administratrix. Evelyn appealed from this decree, and, with the transcript on appeal, filed her abstract containing the complaint, the answer of Sophia, the answer of Evelyn, a recital of the stipulation for the decree of interpleader, setting out in full both findings of fact and conclusions of law in favor of Evelyn which were submitted to and refused by the court, also in full the findings of fact and conclusions of law filed by the court, the final decree directing the payment to Sophia and ignoring the claims of Wilkins, Evelyn, and the administratrix, and reciting in full the assignments of error relied upon by the appellant. This abstract was filed July 16, 1912. On August 12, 1912, the respondent Sophia, filed her motion containing 27 specifications of mistake in the record, claiming diminutions in those respects and asking for a rule compelling the appellant, Evelyn, to file with the court a complete amended edition of the abstract of record, including all matters and corrections suggested by the motion or that the clerk of the Circuit Court be directed to properly certify the record. Many of the objections suggested were merely clerical or typographical. For the most part, how-

ever, the motion sought to incorporate in the abstract the cross-bill of the administratrix and the several answers and replies arising thereon. This motion was overruled by the court August 14, 1912. Afterward, on August 26, 1912, Sophia filed an additional abstract of record, consisting of 33 printed pages, which contains the cross-complaint of the administratrix, Evelyn's answer thereto, and the reply of the administratrix to that answer, together with stipulated findings of fact and conclusions of law resulting in the decree also quoted, discharging the plaintiff, and directing that defendants interplead concerning their claims to the net proceeds of the policy. On August 31, 1912, Evelyn, the appellant, filed her motion to strike from the files the additional printed abstract just mentioned.      MOTION TO STRIKE SUSTAINED.

*Emmons, Emmons & Reid,* for the Motion.

*Mr. Arthur P. Tifft* and *Mr. Hamilton Johnston,* contra.

MR. JUSTICE BURNETT delivered the opinion of the court.

It is provided in Section 554, L. O. L., that: "Upon the appeal being perfected the appellant shall, within 30 days thereafter, file with the clerk of the appellate court a transcript, or such an abstract as the rules of the appellate court may require, of so much of the record as may be necessary to intelligibly present the questions to be decided by the appellate tribunal, together with a copy of the judgment or decree appealed from, the notice of appeal and proof of service thereof and of the undertaking on appeal. * * "

1–3. The terms of Section 555, L. O. L., are these: "When it appears by affidavit to the satisfaction of

the court that the transcript is incomplete in any particular substantially affecting the merits of the judgment or decree appealed from, on motion of the respondent the court shall make a rule upon the clerk of the court below, requiring him to certify as to such alleged omission, and if true, to transmit to the appellate court a certified copy of the pleading, entry, order or other paper omitted in the transcript; or, in such case, the respondent may move to dismiss the appeal, and the court shall allow such motion unless, on the cross-motion of the appellant, it makes a rule upon the clerk concerning such omission, as provided in this section, upon such terms as may be just. * * "   It was under this section that Sophia was attempting to proceed when she filed the motion which this court overruled.   The motion was properly overruled for three reasons: First, it was not supported by affidavit as required by the terms of the section already quoted; in the second place, although it alleges that the omitted portions of the record are necessary on review in this court, yet that statement was a mere conclusion of law, and no facts were set forth, either by averment in the motion, or by affidavit which would inform the court so that it might reach the same conclusion of law suggested by the motion; in the third place, the decree, directing payment of the proceeds of the policy to Sophia and disregarding the claims of Evelyn, the administratrix, and Wilkins, has never been appealed from by anyone except Evelyn.   So, as far as appears by anything before us, it has been acquiesced in to this day by both the administratrix and Wilkins.   The decree of interpleader, discharging the complainant on payment of proceeds of the policy into court and directing the defendants to interplead, was a consent decree, and has never been and could not be disturbed by an appeal.   It was not necessary

to a complete understanding of the case to incorporate that decree at large in the abstract. Neither is the court concerned about the claims of those defendants, on the funds, which were disregarded by the court below and have not been made the subject of appeal. The situation is this: Both Evelyn and Sophia claim the fund. As between them the Circuit Court has decided in favor of Sophia, and Evelyn has appealed. All that is necessary to be decided by this court, as the appellate tribunal, is the question of which of these two parties is entitled to the money in dispute. It has nothing to do with the interests or claims of those parties who have acquiesced in the decision of the court below. Evelyn and Sophia, the only parties before us, must depend upon their own pleadings as illustrative of the questions to be decided. Neither of them can claim anything under the pleadings of other parties. These three reasons furnish ample ground for the decision of the court in denying the motion of Sophia, suggesting diminutions of the record. The third applies with equal force to the motion now under consideration to strike out the respondent's additional abstract of record, for it is an attempt to inject into the record matter which was denied by the ruling of the court on the motion already referred to.

4. There is yet another reason why the respondent's additional abstract of record is improperly before the court, and should be stricken out. Section 555, L. O. L., already mentioned, provides a way by which the defective record can be corrected. Sophia elected to proceed under that section, and has failed for good and sufficient reasons already pointed out. Amplifying, so far as may be, Section 555, L. O. L., Rule 7 of this court reads thus: "If the respondent shall deem the appellant's abstract imperfect or unfair he may, within 10 days after receiving a copy

thereof, deliver to the appellant's counsel one, and to the clerk of this court with proof of service upon appellant, 16 printed copies of such further or additional abstract as he shall deem necessary to a full understanding of the question involved in the appeal.'' It is not necessary to decide whether the abstract of either party shall be compiled from the transcript lodged in the appellate court or from the papers on file in the Circuit Court. It is enough to say that the respondent's additional abstract of record must be filed within 10 days after receiving the appellant's abstract. The certificate on this latter document on file, signed by the counsel for Sophia, shows that they received copies of it July 15, 1912. As mentioned above, the respondent's additional abstract was not filed in this court until August 26, 1912, whereas, according to the rule, it should have reached the custody of the clerk by July 25, 1912. Sophia was too late to operate under the terms of Rule 7, already quoted, and, having elected to proceed under Section 555, L. O. L., she cannot now change her position and attempt to operate under Rule 7 after the period of 10 days, therein prescribed, has elapsed.

The motion to strike out respondent's additional abstract of record is sustained.

MOTION TO STRIKE SUSTAINED.

Argued July 6, decided July 22, rehearing denied September 9, 1913.

ON THE MERITS.

(133 Pac. 1169.)

Department 1. Statement by MR. JUSTICE RAMSEY.

This is a suit in equity in the nature of a bill of interpleader brought by the Mutual Benefit Life Insurance Company of Newark, New Jersey, against Evelyn M. Cummings and Sophia J. Cummings to re-

quire them to interplead concerning the right to receive the amount of a policy of life insurance on the life of Harry A. Cummings, deceased.

On the 5th day of May, 1911, said insurance company issued a policy of life insurance on the life of Harry A. Cummings in the sum of $2,000, which policy was issued in consideration of the payment by said deceased of an annual premium of $54.34 or a semi-annual premium of $27.14. Said deceased paid to said company the first semi-annual premium of $27.14 at the time said policy was issued. Said Harry A. Cummings died on the 23d day of August, 1911. Said policy had earned $2.08, making the amount due on the policy $2,002.08. There was due as a semi-annual premium on said policy the sum of $27.14, which leaves due, as a balance, the sum of $1,974.36. Said policy by its terms made said sum of $2,000 payable, on the death of the insured, to "Evelyn M. Cummings, his wife." The defendant Evelyn M. Cummings claimed that she was entitled to the said sum of $2,000 as the beneficiary of said policy and made proof of her claim. Said Sophia J. Cummings claimed that she was entitled to said $2,000 as the beneficiary of said policy as the wife of Harry A. Cummings, deceased, and made proof of her claim. Each of said parties claimed the whole of said $2,000 and demanded payment thereof. Said company filed its complaint, alleging the necessary facts and asking that said defendants be required to appear and set forth their several titles and claims to the proceeds of said policy, and asked the court to require them to adjust and settle their respective demands between themselves. The plaintiff insurance company deposited in the court below the proceeds of said policy, to be paid to the person entitled thereto.

Each of the defendants filed an answer to the plaintiff's complaint, claiming to be entitled to said money.

The defendant Evelyn M. Cummings in her answer alleges that for about two years before the death of Harry A. Cummings and until his death she lived with him as his wife, and that he represented to the public and his friends that she was his wife, and that she was known to the public as his wife, etc.   The defendant Sophia J. Cummings was shown by the evidence to be the wife of the deceased, but she resided in California, and she and the deceased had not lived together, at any time, for about three years prior to his death.

The court below rendered a decree that the defendant Evelyn M. Cummings was not entitled to the proceeds of said policy on deposit, and that the defendant Sophia J. Cummings was entitled to said money, etc. The defendant Evelyn M. Cummings appealed.

REVERSED: DECREE RENDERED.

For appellant there was a brief, with oral arguments by *Emmons, Emmons & Reid.*

For respondent there was a brief, with oral arguments by *Mr. Arthur P. Tifft* and *Mr. Hamilton Johnston.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

MR. CHIEF JUSTICE McBRIDE dissenting.

The question for decision is whether the defendant Evelyn M. Cummings or the defendant Sophia J. Cummings is entitled to the proceeds of said policy of insurance on deposit in the court below.

5. The evidence shows that Sophia J. Cummings was the wife of said Harry A. Cummings, and that Evelyn M. Cummings was not his wife. It appears that Harry A. Cummings and his wife, Sophia J., separated about three years before his death in the State of

Washington, and that his wife never resided in Oregon until after his death, and that she resided in California at the time of his decease, and that she had had no correspondence with the deceased during said separation.

The defendant Evelyn M. lived with the deceased about two years as his wife, and he represented to his friends and to the public that she was his wife, and she claimed to be his wife. She bore the name of Evelyn M. Cummings, in Portland, but there had been no marriage ceremony. The deceased had not been divorced from his wife and could not legally enter into a marriage contract. Evelyn M. testified that she and the deceased had entered into an agreement to be married. Such agreement, however, was void, but evidence of it was relevant to show the relation between her and the insured. She testified, also, that during the time that she lived with the deceased as his wife she advanced to him money, amounting in the aggregate to $6,000 and jewelry of the value of $2,000, and that she did this to assist him in business. She claims that he never repaid her this money. She testified, also, that he introduced her to his friends as his wife, and this is corroborated by the evidence of other witnesses. She does not claim that they were married, and, of course, she was not his wife, and it was a gross deception for him to represent to his friends and the public that she was his wife. There is no doubt that Sophia J. was his wife and that he had a daughter by her.

The policy of insurance provided that the $2,000 named therein should be paid to Evelyn M. Cummings, "his wife." The evidence shows that, shortly after he obtained this policy, he delivered it to Evelyn M. and told her that it was a present to her, and that it remained in her possession. Sophia J. had no knowl-

edge of this policy until after his death.  In the application for the policy it is stated that the beneficiary thereof should be ''Evelyn M. Cummings,'' wife of the insured.

In her testimony, Sophia J. testified that she had never seen the original policy, and that she doubted whether anyone but Evelyn M. had seen it.  It 'is clearly shown, and not disputed, that the deceased lived with Evelyn M. two years as his wife; that he called her his wife; that he introduced her to his friends and acquaintances as his wife; that his friends and acquaintances believed her to be his wife; that the application for the policy referred to her as his wife, and stated that she should be the beneficiary of the policy; that the policy named her as the beneficiary; and that, after he obtained the policy, he delivered it to her and told her that the policy was a present to her, and that she retained possession of the policy, and that Sophia J. never had the policy or heard of it until after the death of the insured.  These facts prove to a moral certainty that Evelyn M. was intended by the insured to be the beneficiary and to have the whole interest in the policy.  This conclusion is strengthened by the fact that he had been for years estranged from Sophia J., his wife, and that this estrangement was so intense that no letters had passed between them since the separation, a period of several years.

6. The policy is a contract and should be so construed as to effectuate the intention of the parties to it.  In 25 Cyc., p. 741, the rule for the construction of policies is thus stated: ''The language of the policy designating the beneficiary is to be treated as of testamentary character and is to receive as nearly as possible the same construction as if used in a will.  In determining the intention as to the beneficiaries, the policy should be so construed, if possible, as to give

effect to every clause and word, and obviously clerical errors will be corrected or disregarded.''

7. In this case, by agreement between the deceased and Evelyn M., she adopted his surname and was called by them and by her and his acquaintances ''Evelyn M. Cummings,'' and by their agreement she was called his wife. A person may adopt or assume a different name from his or her true name and transact business in such assumed name. 29 Cyc. 270 states the law upon this subject thus: ''Without abandoning a real name, a person may adopt any name, style, or signature wholly different from his own name by which he may transact business, execute contracts, issue negotiable paper, and sue and be sued. Such assumed or fictitious name may be either purely an artificial name or a name that is or may be applied to natural persons.'' On page 271 of the same book the author further states the rule thus: ''It is customary for persons to bear the surname of their parents, but this is not obligatory. A man may change his name without resort to legal proceedings and for all purposes the name thus assumed will constitute his legal name just as much as if he had borne it from birth.''

8. When a policy is issued and delivered, naming a beneficiary, to whom the money is to be paid, without a reservation of power to change the beneficiary, an irrevocable trust is created: Bacon, Benefit Societies and Life Insurance, § 292.

9. It is the settled law of this country that a person has a right to insure his own life and have the money made payable to any person whom he may desire, whether such beneficiary has an insurable interest in his life or not: *Brett* v. *Warnick,* 44 Or. 519 (75 Pac. 1061, 102 Am. St. Rep. 639) ; *Dolan* v. *Supreme Council,* 152 Mich. 266 (116 N. W. 383, 15 Ann. Cas. 232) ; *Reed* v. *Provident Life Ins. Co.,* 190 N. Y. 111 (82

N. E. 734); *Locher* v. *Kuechenmiester,* 120 Mo. App.
701 (98 S. W. 92); *Hess* v. *Sengenfelter,* 127 Ky. 348,
(105 S. W. 476, 128 Am. St. Rep. 343, 14 L. R. A. (N. S.)
1172); *Union Fraternal League* v. *Walton,* 109 Ga.
1 (34 S. E. 317, 77 Am. St. Rep. 350, 46 L. R. A. 424);
*Langdon* v. *Union Mut. Life Ins. Co.* (C. C.), 14 Fed.
272; 25 Cyc. 708; *Hill* v. *United Life Ins. Co.,* 154
Pa. 29 (25 Atl. 771, 35 Am. St. Rep. 807); *Milner* v.
*Bowman,* 119 Ind. 448 (21 N. E. 1094, 5 L. R. A. 95).

In *Brett* v. *Warnick,* 44 Or. 519 (75 Pac. 1061, 102
Am. St. Rep. 639), Justice Wolverton says: "It is
beyond cavil that a person may take out a policy of
insurance on his own life and make it payable to whom-
soever he pleases; he being the moving spirit and as-
suming the responsibility of meeting the premiums or
assessments."

In *Reed* v. *Provident Life Ins. Co.,* 190 N. Y. 111
(82 N. E. 734), the New York Court of Appeals says:
"But a person may insure his own life and provide in
the contract of insurance that the money shall be pay-
able to anyone whom he may appoint or assign the
policy to."

In *Dolan* v. *Supreme Council,* 152 Mich. 266 (116
N. W. 383, 15 Ann. Cas. 232), the Supreme Court of
Michigan says: "The authority of these cases [re-
ferred to in the opinion] and their reasoning warrants
the statement that the rule of public policy which for-
bids one insuring a life in which he has no insurable
interest does not prevent his being made a beneficiary
in an insurance policy secured by the insured."

In the case of *Union Fraternal League* v. *Walton,*
109 Ga. 1 (34 S. E. 317, 77 Am. St. Rep. 350, 46 L. R. A.
424), the Supreme Court of Georgia says: "But we
feel assured, both by reason and the long line of adju-
dicated cases to which only partial reference has been
made, that the true rule which should obtain in such

cases is that where one obtains a contract of insurance on his own life and keeps up the same out of his own means, and directs the amount of the policy to be paid at his death to another whom from love, friendship or any other reason he desires to benefit, the named beneficiary is entitled to recover on such contract, notwithstanding it may not be shown that he or she has any other insurable interest in the life of the deceased than exists in his good will and emanates from his expressed wish to benefit.''

In this case the policy was made payable to Evelyn M. Cummings, designated as the wife of the insured. She was not his lawful wife, but she was reputed to be his wife.  The insurance company is not making any defense in this case, and, in fact, it admits its liability.

The living together as husband and wife of the deceased and the beneficiary, while the deceased had a wife living, was an act of gross immorality that cannot be too strongly condemned, but this illicit relation between them did not incapacitate him to make a valid contract of insurance upon his life for the benefit of his reputed wife.  If he had made her a present of $2,000, the gift would have been valid as to all the world, excepting his creditors.  A man or a woman, being of lawful age and *compos mentis,* has power to give all his or her property to his or her paramour, and no one but the creditors of the person making such a gift can successfully contest the validity thereof. The immoral relation between the parties does not vitiate their contract or gift.

It may have been the insured's duty to provide for his wife and child and to have made no provision for the woman with whom he lived illegally.  We do not doubt his duty in the premises, but this duty is of imperfect obligation, and this court has no power to make a contract for him or to change one he has made.  By

the contract which he made with the insurance company, the proceeds of the policy were to be paid, at his death, to the appellant, Evelyn M. Cummings. We have no power to decree that, when he stipulated that this money should be paid to Evelyn M., his wife, he meant that it should be paid to Sophia J., his wife. It is true that Evelyn M. was not his lawful wife, but she was his reputed wife and was generally so known. It is our duty to construe the policy so as to effectuate the intention of the insured and the company that issued the policy. It is morally certain that the parties to this contract intended that the proceeds of the policy should be paid to Evelyn M. and not to Sophia J.

The case of *Bogart* v. *Thompson,* 24 Misc. Rep. 581 (53 N. Y. Supp. 622), is very much like this case. There a husband abandoned his wife but thereafter promised to marry one whose Christian name was "Emma L." His fiancée did not know of his previous marriage, but she knew that he had lived with the woman who was his wife. She claimed, however, that she did not know of his marriage to her. He obtained a policy on his life and made it payable to his fiancée as "Mrs Emma L. Thompson, his wife." His wife's name was Eliza Jane Thompson. Both he and his wife died, and his fiancée and the administrator of his wife's estate each claimed the proceeds of the policy. A suit of interpleader was brought, and the wife's administrator claimed the money on the ground that his intestate was the wife of the insured and that his illegal fiancée was not his wife, but the court held that the insured intended his fiancée to have the money and gave it to her. The court said: "The defendant contends that the designation 'wife' indicated Thompson's intention to designate his lawful wife, Eliza Jane Thompson. In view, however, of the difference in names, and of his engagement to marry the plaintiff,

and of the delivery of the contract (policy) to her, it is manifest that by such designation he intended to name the plaintiff and not his lawful wife, Eliza Jane Thompson. The duty of the court is to ascertain the intention of the member of the beneficiary order and to give that intention effect, provided it does not contravene public policy or any statute.'' The court decided that the woman to whom the insured was illegally engaged was entitled to the money.

In *Story* v. *Williamsburgh M. M. B. Assn.*, 95 N. Y. 474, the facts were: Story married a woman named Mary and lived with her as his wife until his death, but he had a lawful wife living in England. During his life he obtained a policy and made it payable to ''Mary Story, his wife.'' After his death, she claimed the proceeds of the policy and sued the insurance company. The Court of Appeals held that the reputed wife, named as the beneficiary, was entitled to the money, and that it was not necessary that she should be his lawful wife, although she was referred to in the policy as his wife.

In the case of *Lampkin* v. *Travelers' Ins. Co.*, 11 Colo. App. 249 (52 Pac. 1040), the facts were briefly these: ''Jos. R. Lampkin obtained a policy of insurance on his life, and made it payable to Lou Lampkin as his wife. He died, and the beneficiary sued the company to recover the insurance, and the company defended on the ground that the beneficiary named was not his wife, and that he had a lawful wife living. The company claimed that the statement, in the application for the policy, that the beneficiary was his wife was a warranty. The insured had lived with the beneficiary as his wife. The Court of Appeals, however, held that the statement in the application that the beneficiary was his wife was not a warranty but a mere description of the person. The court held also that a

woman who lives with a man as his wife, although she is not his wife, has an insurable interest in him."

In this case the insurer makes no defense, and there is no issue as to fraud or breach of warranty, and therefore the cases on those subjects are irrelevant.

The counsel for the respondent placed much reliance on the case of *Hogan* v. *Wallace,* 166 Ill. 328 (46 N. E. 1136). The facts were these: Michael Hogan, who could neither read nor write, obtained a policy of insurance on his life, and it was made payable to "Mrs. Kate Hogan, his wife." Another person filled out the application for the insured and made a mistake in the name of the beneficiary. His wife's name was Ellen B. Hogan. The insured lived with her until the time of his death and had several children by her. He never had any other wife. His sister's maiden name was Kate Hogan, but when this policy was issued her name was Kate Wallace. His wife and his sister each claimed the proceeds of the policy. His sister's name did not correspond with the name in the policy, as it was payable to Mrs. Kate Hogan, his wife, while her name was Kate Wallace, and of course she was not his wife. His wife's name was Ellen B. Hogan. The court, after hearing the evidence, decided that there was an error in the name and gave the money to the wife on the ground that it was the intention of the insured to provide for her.

In this case it is morally certain that there was no error in the name of the beneficiary, the appellant having adopted the name "Cummings" with the approval of the insured, and he having held her out to the public as his wife. We are satisfied that he intended that she should receive the proceeds of the policy, and that his lawful wife should have no interest therein.

10. The respondent's counsel claims that the findings of the court below should be of persuasive force on

this appeal, but Section 405, L. O. L., expressly provides that equity cases shall be tried anew in this court *without reference to such findings.* This indicates that the findings of the court below, in equity cases, should be disregarded on appeal.

The decree of the court below is reversed, and a decree of this court will be entered requiring the payment to Evelyn M. Cummings, the defendant and appellant, of the said sum of $1,974.36 deposited in this case in the court below, as the proceeds of said policy of insurance by the complainant, the Mutual Benefit Life Insurance Company, of Newark, New Jersey, and neither party will be allowed costs or disbursements in this court or in the court below.

REVERSED: DECREE RENDERED.

MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.

MR. CHIEF JUSTICE MCBRIDE delivered the following dissenting opinion:

The cases cited in the opinion fully justify upon authority the conclusion reached, but in my opinion they all overlook to a great extent the element of morals and public policy which enters into the question. Under the testimony here we have a case of a man deserting his lawful wife and living in adultery with another woman, who, the circumstances indicate, must have been aware of his offense against his wife and family. In this situation he takes the money that should have been expended for the protection of his lawful wife and buys a policy of insurance for his mistress. To allow the mistress under such circumstances to recover would, in my judgment, be contrary to public policy and good morals. It would tend to encourage such illicit relations, and. to promote their continuance. Though the contract was void as against

good morals, the insurance company has not made such a defense, but by its interpleader has brought the money into court and says that it is indifferent as to who takes it. Since the money of the husband bought the policy, and we are sitting as a court of equity to dispose of it, I am of the opinion that it would be good equity to turn it into the husband's estate.

There is no precedent for the course thus indicated, but, in my judgment, the Supreme Court of Oregon should make one, as I believe the law justifies it and the conservation of public morals requires it.