## Charles T. Nash et al. v. Class Classon.

1. CONTRACTS—*Principal Bound by the Acts of the Agents.*—When a person owns a warehouse and pays for all grain purchased and placed therein, but employs another to take charge of the same and his business connected therewith, such other person not holding himself out as

Nash v. Classon.

proprietor, but as his agent, the presumption is that it is the contract of the owner and that he is liable thereon.

2. MARKET PRICES—*Presumptions as to Their Continuance.*—Where the market price of grain is shown on a day named, in the absence of evidence to the contrary, it will be presumed to continue to the next day.

**Memorandum.**—Assumpsit. In the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Declaration; special and common counts; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1894, and affirmed. Opinion filed November 12, 1894.

STATEMENT OF THE CASE.

This was an action brought by appellee to recover the price of certain corn alleged to have been delivered and sold to appellants at an agreed price.

Appellee introduced evidence tending to show that in 1891 he bargained with appellants, through one Smith, their agent, to deliver corn to the elevator of appellants at Wedron, Illinois, they to warehouse the same, and to pay him, whenever he wished to sell, the Chicago market price, less five cents per bushel; that afterward he delivered to them as agreed, over 6,000 bushels of corn, and on the 28th of November, 1891, notified them that he wished to sell; that the Chicago market price was then seventy cents per bushel.

Upon the trial it appeared that for a number of years one H. S. Gilbert was engaged in the grain business at various points in La Salle county. He finally became embarrassed, and in 1889 failed. The defendants were his principal creditors. To secure their claim he deeded to them certain warehouses and real estate, and shortly thereafter a contract was entered into between them. In and by this contract it was agreed that defendants should convey to Gilbert, upon the payment by him of $20,000, with interest, taxes, etc., on or before January 1, 1893, certain warehouses and other property, used in carrying on the grain business at certain places in La Salle county, and it was further agreed as follows:

" Whereas, it is understood and agreed between the parties hereto, that the said party of the second part shall engage in and conduct the business of buying and selling grain at the stations of Ottawa, Grand Ridge, Wedron, Serena, Utica and Buffalo Rock, all of said places being in said county of La Salle, under the conditions and limitations hereinafter expressed, that is to say :

" Said party of the second part shall conduct said business under the direction and supervision of said parties of the first part, who shall be represented in the management of said business by an agent of their selection, such agent to handle and control all the money used in the conduct of said business, and to exercise a supervisory control over said business in general.

" Said parties of the first part covenant and agree to furnish and supply to said party of the second part in the amount above stated, the amount of money necessary for the proper conduct and operation of said business, and said party of the second part covenants and agrees to pay to said parties of the first part all moneys so advanced by them, together with interest thereon, at the rate of eight per cent per annum, payable monthly; to ship all grain purchased prior to the time of making above named payments to said parties of the first part at Chicago, or elsewhere, as said parties may direct.

" It is covenanted and agreed between the parties hereto, that there shall be paid out of the earnings of said business, a salary not to exceed $100 per month to the agent of said parties heretofore mentioned; that said second party shall be allowed, out of the net earnings of said business, the sum of $150 per month, and all other earnings, after the pay. ment of the necessary expenses of the business shall apply upon, and go toward, the payment of the said sum of $20,000.

" And the said parties of the first part covenant and agree that upon the payment to them of all moneys advanced by them as aforesaid, and all interest due thereon, and the payment of said sum of $20,000, together with in-

terest due thereon, as above set forth, to execute to said second party conveyances of the property above described, in the manner above set forth.

"And in case of the failure of said second party to make either of the payments, or to perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, and the said parties of the first part shall have the right to re-enter and take possession of the premises aforesaid."

Under this contract the defendants appointed as their agent one A. Z. Perrin, whose duty it was to keep the books and see that the money furnished by defendants was paid out for grain. A bank account was kept in the name of defendants in the First National Bank of Ottawa, and against this account Perrin drew checks in payment for grain purchased. He never gave any instructions to Gilbert as to how he should conduct the business, nor did he exercise any control over him whatever, being put there for the purpose of keeping the books and seeing that the cash was paid out for grain, and that the money paid was paid out for grain at prices that would show a profit on Chicago prices. The prices were made by Gilbert, and Perrin had nothing to do with fixing them.

It also appeared that for some time there was used in the business carried on at Wedron, slips like the following:

"Wedron Warehouse, office of Nash, Wright & Co.

H. S. GILBERT, Agent.

Grain and Commission."

Appellants offered to show that they wrote to Gilbert requesting him not to use such slips; this the court refused to allow appellants to prove.

Appellee had often seen such slips. Appellee's corn was shipped by Gilbert to appellants, at Chicago, between the 12th and 24th of November, 1891.

Appellants denied that Gilbert was their agent to buy grain, and also denied that the business carried on by him at Wedron was theirs, and also insisted that Smith, who

was employed by Gilbert in the business at Wedron, was not authorized to make any such bargain as appellee testified was made through Smith with him, appellee.

The jury entered a verdict for the plaintiff, upon which there was judgment, and from this appellants prosecute this appeal.

· DUNCAN & GILBERT and W. H. STEAD, attorneys for appellants.

APPELLEE'S BRIEF, FOWLER BROS., ATTORNEYS; WING & BARGE, OF COUNSEL.

" The principal is bound equally by the authority which he actually gives, and by that which, by his own acts, he appears to give. The appearance of the authority is one' thing, and for that the principal is responsible." Smith v. Peoria County, 59 Ill. 412; Parsons on Con., 44; Harvey Wolff & Co. v. Miles, 16 Ill. App. 533; National Furnace Co. v. Keystone Mfg. Co., 110 Ill. 427; Singer Mfg. Co. v. Holdfordt, 86 Ill. 456; Thurber & Co. v. Anderson, 88 Ill. 167; Goeing v. Outhouse et al., 95 Ill. 346; Home Ins. Co. v. Pierce, 75 Ill. 427.

"The principal may, when discovered, be held responsible, although concealed by the agent, and he alone trusted." Doan v. Duncan, 17 Ill. 275; Crain et al. v. Nat. Bank, 114 Ill. 526; Story on Agency, Sec. 17; Malburn v. Schriner, 49 Ill. 69.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The question involved in this case is not so much as between appellants and Gilbert, whose business was, under their agreement, carried on at Wedron and other towns in La Salle county, but as to how did appellants, owners of the warehouses as they were, and supplying the money for the conduct of the business as they did, hold themselves out or suffer Gilbert, their agent, to hold them out? Did they knowingly permit him to induce the farmers, who brought

grain to their warehouses and who made contracts for the sale of corn with agents in charge of such houses, to believe that they were the owners and proprietors of the business, and was appellee justified in so believing ?

Appellants knew that they owned the warehouses; that they kept in their firm name a bank account at the county seat of La Salle county, and that their agent, Mr. Perrin, paid with their checks for all the grain that was purchased. What would a farmer of La Salle county naturally conclude from this ? As appellants owned the warehouses and paid for all the grain that was purchased and placed therein, and as Gilbert, who had charge of the business, did not hold himself out as a proprietor but as an agent, merely, it is manifest that parties selling grain in this way would naturally conclude that appellants bought it through Gilbert as their agent.

That Gilbert as well as Perrin were their agents for some purposes is not denied. Gilbert seems to have understood that contracts made through him for the purchase of grain were their agreements; as, when one Keith, from whom he had bought corn, failed to comply with his contract, he, Gilbert, brought suit against Keith in the name of appellants; he also made use in the business of letter heads and printed slips, given to those who sold grain, on which the firm name of appellants appeared as proprietors.

It is true that it does not appear that appellants knew as to such use of their name on letter heads and slips or in such suit; and it may be urged that these acts are only evidence of what Gilbert understood to be the relations existing between him and appellants.

That the grain when purchased and paid for by the money of appellants was theirs, is settled by the cases of Broadwell v. Howard, 77 Ill. 305, Cool v. Carmichael, 66 Ill. 216, and Nelson v. McIntyre, 1 Ill. App. 603.

We are of the opinion that the position and conduct of appellants was such that this contract made by Smith for the purchase of grain, which was actually received into their warehouse at Wedron and shipped to them, was their contract, and that they are liable thereon.

It is urged that there was a failure to show what the Chicago market price of corn was November 28th, the day upon which appellee elected to sell. The market price on the 27th was shown. In the absence of evidence that the price was different on the 28th, we think that the rate existing n the 27th must be presumed to have continued to the next .ay. Doubtless there are on the Chicago market, some-imes, especially in the case of attempted corners, great fluctuations from day to day; but if corn was any lower on the 28th than it was on the 27th, it was easy for appellants to have shown this, and in the absence of evidence we think that the ordinary rule that a state of affairs once shown to exist is presumed to continue, may be applied for at least the term of one day, even to the Chicago grain market.

We agree with counsel for appellants that contracts are to be interpreted as entireties, and that the court in construing instruments will place itself in the shoes of the parties who made them, but the view we have taken of the record before us renders unnecessary any discussion by us of the relation which, as between appellants and Gilbert, appellants occupied.

The judgment of the Superior Court will be affirmed.

MR. JUSTICE GARY.

I go further. In my judgment the business conducted at the different elevators was the business of the appellants, conducted by their authority and by their agents, for whose conduct the appellants are responsible.