## ELLEN B. HOGAN

### v.

## KATE WALLACE.

*Filed at Ottawa April 3, 1897.*

1. EVIDENCE—*when extrinsic evidence is admissible to aid description in insurance policy.* Where it appears by extrinsic evidence that the words used in an insurance policy to designate the beneficiary fail to correctly describe any person related to or known by the insured, further extrinsic evidence may be received to aid in determining who is the intended beneficiary.

2. SAME—*weight to be given to testimony of witness whose recollection is indistinct.* But little weight can be given to the testimony of a witness relating to a transaction not personally concerning him, which took place many years before, where, when first questioned, he is unable to recall the transaction, and has but an indistinct and imperfect recollection thereof after the matter has been fully explained to him.

3. SAME—*materiality of declarations of insured as to whom he had made beneficiary.* Where the identity of the beneficiary in an insurance policy is clearly established, the declarations of the insured, made after taking out the policy, as to whom he had made beneficiary, are immaterial.

CARTER, J., dissenting.

*Hogan* v. *Wallace,* 62 Ill. App. 385, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

STILLMAN & MARTYN, for appellant:

A benefit certificate is in the nature of a will, and the rules of evidence which are applicable to wills should govern in its construction. Niblack on Benefit Societies, sec. 179.

Marriage confers upon a woman her husband's surname, which is thenceforth her actual name. 2 Bishop on Marriage, Div. and Sep. sec. 1622; *Fendall* v. *Goldsmid,* 2 P. D. 263.

Parol evidence of alleged declarations of the deceased, both before and after the issuance of the certificate and at the time of the application, was inadmissible in evidence. 1 Greenleaf on Evidence, (15th ed.) sec. 290, note *a;* Stephen's Dig. art. 91, 6, 7, 8; Wigram on Wills, 188; 1 Jarman on Wills, (6th ed.) 349; *Hiscocks* v. *Hiscocks,* 5 M. & W. 363; *Drake* v. *Drake,* 8 H. of L. 172; *Charter* v. *Charter,* L. R. 7 E. & I. App. 364; *Miller* v. *Travers,* 8 Bing. 244; *Fitzpatrick* v. *Fitzpatrick,* 36 Iowa, 674; *Kurtz* v. *Hibner,* 55 Ill. 514; *Judy* v. *Williams,* 2 Ind. 449; *Button* v. *American Tract Society,* 23 Vt. 336; *Richards* v. *Miller,* 62 Ill. 417; *Broomfield* v. *Wilson,* 78 id. 467; *Bradish* v. *Yocum,* 130 id. 386.

The description of a beneficiary as the wife of the deceased will prevail over and correct a mistake in the name. Coke on Littleton, 3*a;* *Connolly* v. *Pardon,* 1 Paige's Ch. 290; *Thayer* v. *Boston,* 15 Gray, 347; *Winkley* v. *Kaime,* 32 N. H. 268; *Adams* v. *Jones,* 21 L. J. 352; *Emmert* v. *Hays,* 89 Ill. 11; *McKinnon* v. *People,* 110 id. 305; *Kreitz* v. *Behrensmeyer,* 125 id. 141; *Bachmann* v. *Supreme Lodge,* 44 Ill. App. 188.

FARSON & GREENFIELD, for appellee:

In the case of a latent ambiguity in a written instrument explanatory declarations made at the time of its execution are admissible. *Harris* v. *Bishop,* 2 P. Wms. 137; *Thomas* v. *Thomas,* 6 T. R. 671; *Clark* v. *Powers,* 45 Ill. 284; *Fisher* v. *Quackenbush,* 83 id. 310; *Sharpe* v. *Thompson,* 100 id. 447; *Stevens* v. *Wait,* 112 id. 548; *Bowen* v. *Allen,* 113 id. 59; *Riebling* v. *Tracy,* 17 Ill. App. 162; *Bradish* v. *Yocum,* 130 Ill. 392; *Halliday* v. *Hess,* 147 id. 588; *Mason* v. *Merrill,* 129 id. 507.

Mr. JUSTICE BAKER delivered the opinion of the court:

This was a bill of interpleader filed in the Superior Court of Cook county by the High Court of the Independent Order of Foresters, against appellant, Ellen B. Hogan, and Kate Wallace, appellee, for the purpose of determining which of said persons is entitled to the proceeds of an insurance policy issued by the complainant

to one Michael Hogan in his lifetime.  Both defendants answered, and the merits of their respective claims were tried before the chancellor, who·awarded the fund in controversy to appellee.  From the judgment of the Appellate Court affirming the decree entered in the cause this appeal is taken.

On August 6, 1884, the complainant issued·its certain benefit certificate in the sum of $1000 to Michael Hogan, the said sum being payable, at his death, to "Mrs. Kate Hogan, his wife."  Michael Hogan had been married, in 1872, to appellant, who lived with him continuously as his wife from that date until his death, in 1895.  Their five children survived him, and they are now living with appellant.  Appellee is a sister of said Michael Hogan.  She was married in 1878, six years before the issuance of the policy in question, to one James Wallace, and has ever since lived with him as his wife.  He has always supported, and still does support, his family.  Appellee has never lived with her brother since her marriage, nor has she ever been dependent upon him.

. It appeared on the trial that the designation in the certificate of the beneficiary, viz., "Mrs. Kate Hogan, his wife," did not correctly describe either appellant or appellee.  The deceased never had any wife other than appellant, who is Mrs. Hogan "his wife," but not "Mrs. Kate Hogan."  Appellee is Mrs. Kate Wallace, although her maiden name was Kate Hogan.  The question to be determined is which of the two claimants is entitled to the fund in controversy, or, rather, who is the person described in the certificate.

It seems that the deceased could neither read nor write.  At his request one Dr. Lawless wrote out for him the application for the policy.  It appears from the testimony of the doctor that he had known both the Hogans and the Wallaces for several years prior to the date of the application, and was the physician for both families.  He stated that he knew both Mrs. Hogan and Mrs. Wal-

lace personally, but that *he did not know the one from the other;* that he never knew appellant's name, *but thought that it was "Kate."* He further stated that the application was made at his own house, no one being present but himself and Michael Hogan. It had been shown by parol that the words in the certificate did not describe any person with complete accuracy. This evidence, therefore, was entirely competent, being evidence of facts and circumstances surrounding the deceased at the time the application was made, its purpose being to place the court in the position the insured was in at that time, in order to enable the court to determine the question at issue. Where the uncertainty does not appear upon the face of the instrument, but is made manifest by extrinsic evidence, further evidence of the character we are considering may be adduced for the purpose of elucidating the meaning of the words of the description. *Decker* v. *Decker*, 121 Ill. 341; *Hiscocks* v. *Hiscocks*, 5 M. & W. 363.

The beneficiary named in the policy is described as "Mrs. Kate Hogan, my wife." Appellant was his "wife" and also Mrs. Hogan, though not "Mrs. Kate Hogan." We think this evidence amply explains who is the beneficiary, and why she was described as appears in the policy. Michael Hogan, being unable to read or write, had Dr. Lawless make out his application for him. We entertain no doubt that he told the doctor the person to whom he desired the insurance to be made payable was "my wife." The doctor so wrote it, but since he "never knew her name but thought that [Kate] was her name," he wrote "Kate Hogan" instead of Ellen B. Hogan, as he should have done. This view of the case is borne out by the fact that it would hardly be natural, nor is it to be expected, that Michael Hogan, when he had a wife and five children of his own to provide for, would have insured his life for the benefit of a married sister who was well supported by her own husband and who did not live with and was in no sense dependent upon the insured.

When the certificate is read in the light of the surrounding facts and circumstances it becomes plain that appellant is the beneficiary named therein.

This explanation of how the beneficiary happened to be described as appears in the certificate is so simple and reasonable that we do not attach any weight to the further, and improbable, testimony of the doctor as to the conversation that he stated occurred at the time between deceased and himself. The witness testified that he asked Hogan to whom the policy should be made payable, and that the latter replied "Kate Hogan;" that the witness then asked Hogan, and afterwards repeated the question, if that was his wife, and that Hogan did not answer the question either time it was asked; that then he, supposing Kate was Hogan's wife, described her as such. A man taking such a serious step as insuring his life would not be apt to be so careless or senseless as to fail or refuse to answer such an important question as the one the doctor testified he twice asked Hogan. It is utterly improbable that the insured acted in the manner testified to by the witness, and thus stultified himself by refusing to give to the former the information necessary for the proper doing of that which he had requested the witness to do for him.

It is hardly to be expected that the witness could testify with accuracy as to the details of that supposed conversation, for the application was made out twelve years prior to this trial. It was a matter that in nowise personally concerned him, and was only one of many applications which he filled out during that period for the Independent Order of Foresters. Moreover, he himself stated that when, a short time before the trial, he was questioned on the subject by appellee's attorney he had absolutely no recollection of the matter and did not remember that he had written the application, and that when the application was shown him he knew that he must have written it because it was in his handwriting.

The attorney and Wallace then explained to him the exact point in controversy and asked him to try to remember about it; that he afterwards recalled the conversation testified to, but could remember nothing else about the transaction. Are not these facts sufficient to take away from his testimony about this conversation any weight to which it might otherwise be entitled? A man who has utterly forgotten a transaction that occurred years before, may, when what purport to be the facts of that transaction are years afterwards related to him, in the effort to recall the circumstances, so often revolve in his mind what has been told him that he finally imagines he remembers the matter, whereas, in truth, the recollection is of what was related to him as being the facts of the transaction, and is not of the transaction itself. Such, probably, was the case with Dr. Lawless, and, honestly enough, perhaps, he has testified to a conversation which never occurred, or which, in its details, was not as testified to.

The question was, who was the beneficiary named in the policy? And her identity having been established, as we have seen, and all doubt on that point removed, there was no necessity or occasion for the admission in evidence, even if such testimony were competent, of the declarations of the deceased, which were made subsequently to the issuance of the policy. Said declarations were said to have been made to appellant, to her son and her daughter, and to appellee, respectively. The statements of the deceased to the first three of them were to the effect that his wife would get the insurance money when he died, while the statements testified to by appellee and Mrs. Rotter were that appellee was the beneficiary. Whether competent or incompetent as evidence in this case, the testimony of these witnesses as to the declarations of the deceased is so conflicting, artificial and improbable, as to be, all of it, utterly untrustworthy. The identity of the beneficiary having been clearly estab-

lished, it was immaterial what the insured may have said that he had done. What he actually did was the controlling question—not what he said or thought he had done. Besides this, the evidence of declarations heard in the trial court would, if considered, only so complicate the case as to render the designation in the policy of the beneficiary uncertain and void, in which event the fund would, under the terms of the policy and the rules of the order, be payable to appellant, as the widow of the insured.

It follows from what we have said that the Appellate Court erred in affirming the decree of the Superior Court. The judgment of that court and the decree of the Superior Court are therefore reversed, and the cause is remanded to the latter court with directions to enter a decree awarding the fund in controversy to appellant.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I am unable to agree with the majority of the court in the decision rendered in this case or in the reasons given therefor. The assured could neither read nor write, and Dr. Lawless, who wrote the application for him, testified that the assured told him to make it payable to "Kate Hogan." His wife's name was Ellen B. Hogan, but he had a sister married to Wallace whose maiden name was Kate Hogan, and when the witness asked him if Kate Hogan was his wife, he replied, make it to "Kate Hogan," and the relationship of wife was put in by the witness simply because he supposed it was correct, and not by Hogan's direction. It does not seem probable that the assured would have given the name "Kate Hogan" if he intended his wife, and not his sister, to be the beneficiary. We must reject this part of the testimony altogether, or we should hold the sister, and not the wife, was meant,— unless, indeed, it can be supposed that Hogan had forgotten his wife's name. Besides, if he intended the insurance for his wife it would seem more probable that

he would have said so,—that he would have emphasized the relationship, rather than the name and not mentioning the relationship.   If the witness is to be believed he repeated the name "Kate Hogan," and while Hogan's sister's name was then Kate Wallace, there is nothing unusual in brothers and sisters speaking of their sisters by using their maiden instead of their husbands' names.   It may well be, and from the evidence it seems probable, that Hogan did not want Dr. Lawless or any one else to know that he was making his sister, rather than his wife, the beneficiary.   It seems from the evidence that he considered himself indebted to his sister $1000 for moneys which he had received on the sale of certain property belonging to his mother, $1000 of which, at his mother's request, he had promised to pay to his sister, but which he had never paid.

From the circumstances and lapse of time it may be that Dr. Lawless' testimony is not entitled to the same weight as it would have been if the conversation with Hogan had not taken place so many years before the trial, but there was practically no other evidence on that branch of the case, and I can see no reason for disregarding it; and when he testifies that he put in the relationship of "wife" himself, without any direction from Hogan, and, as it would seem, without Hogan's knowledge, I can not see why that designation should prevail over the designation of "Kate," made by Hogan himself.   The trial court heard the evidence in open court, saw and observed the witnesses, and, as often held by this court, had better facilities for ascertaining the very truth of the matter than we have, and his findings of fact, under such circumstances, ought not to be disturbed, especially where, as in this case, the most that can be said for appellant is that the case is doubtful upon the facts.   I cannot reach the conclusion that it is a case for reversal.