Mutual Life Insurance Company of New York, Complainant v. John F Devine, Administrator and Fred G. Loebman, Defendants.
On Appeal of John F. Devine, Administrator, Appellant, v. Fred G. Loebman, Appellee.

## Gen. No. 17,373.

1. INSURANCE—*conflict of laws.* Policies of life insurance, like other contracts, are construed according to the law of the place where they are made.

2. CONFLICT OF LAWS—*when common law is presumed to be in force.* In construing a contract of another state when there is no proof of what the law of the place of the contract is, it is presumed that the common law is in force there.

3. INSURANCE—*conflict of laws.* In an action on an insurance policy, where the application contains a provision that it will constitute no contract until the policy is issued, delivered and the first premium paid, and there is no evidence to show where the policy was delivered on the first premium paid, the contract will be construed according to the rules of the common law.

4. CONTRACTS—*construction.* At common law contracts must be so construed as to carry into effect the real intent and understanding of the parties.

5. CONTRACTS—*construction.* Where the intent and understanding of the parties to a contract is sufficiently apparent, effect must be given to it, even if in so doing violence is done to the language employed, for greater regard is to be given to the clear intent of the parties than to any particular words used.

6. CONTRACTS—*intent, how determined.* In construing a contract, the intention of the parties must be ascertained from the words employed, the connection in which they are used, and the subject-matter of the contract.

7. CONTRACTS—*when viewed from position of maker to determine intent.* When necessary in construing a contract the court will put itself in the place of the parties and read the contract in the light of the objects they had in view and the circumstances surrounding them at the time it was made so as to understand the language in the sense intended.

8. CONTRACTS—*construction.* In construing a contract the scope and end of every matter covered by the contract is to be considered.

9. INSURANCE—*construction of policies.* In construing a life insurance policy the intent of the insured as to who the beneficiary shall be controls.

10. INSURANCE—*construction of policy.* Where insured has his policy issued payable to his wife "if living and if not, to their children or their guardian for their use" and, at the time, insured has only one child, the fact that the term "children" is used indicates that it is intended to designate a class.

11. WILLS—*where fund is given to a class.* Where by the terms of a will a fund is given to a class of persons, the determination of who belong to the class and who consequently are entitled to participate in the distribution of the fund is postponed until the death of the testator and the fund goes to the survivor or survivors of the designated class.

12. INSURANCE—*policy to be construed by rules applicable to construction of wills.* In determining who are beneficiaries in an insurance policy the policy is to be construed by the rules applicable to the construction of wills.

13. INSURANCE—*where term "children" in an insurance policy describes a class.* Where a bill of interpleader is filed by an insurance company to determine who is entitled to certain insurance, the policy providing it should be payable to the wife "if living and if not, to their children or their guardian for their use," and the insured survives his wife and daughter and dies leaving a son, it is held that the word "children" describes a class and the son being the only survivor is entitled to the insurance as against the administrator of the daughter.

14. INSURANCE—*vested rights of beneficiaries.* The beneficiaries named in a policy of insurance have vested rights in the fund and only those named as beneficiaries have such rights.

15. INSURANCE—*who not beneficiary.* Where insured has his policy issued payable to his wife "if living and if not, to their children or their guardian for their use," a daughter who died ten years before her father, the insured, was not a beneficiary and never had a vested interest in the fund.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed May 21, 1913. Rehearing denied June 9, 1913.

GARDNER, CARTON & GARDNER, for appellant.

SABATH & LEVINSON, for appellee; LEO W. HOFFMAN, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

On September 25, 1877, one Gustav Loebman, now

deceased, applied to The Mutual Life Insurance Company of New York for a life insurance policy on his own life, in which application he named his wife, Sadde Loebman, as the beneficiary, if she should be living when the policy matured, and directed that if she should not then be living, the children of both himself and wife should receive the insurance money. On September 27, 1877, in due course of business, a policy was issued on such application, which contained the following provision:

"Does Promise To Pay to Sadde Loebman, Wife of Gustav Loebman, of Brookeville, Jefferson Co., Penna., for her sole use, if living, in conformity with the statute, and if not living, to their children, or their guardian, for their use, the sum, etc."

When the policy was issued the insured and his wife, Sadde, had one child, Fred G. Loebman, the appellee, who was born May 21, 1877, about four months before the policy in question was issued. On August 14, 1878, nearly eleven months after the policy was issued, a second child, Bertha, was born. These two children were the only children of the insured and his wife, Sadde. Sadde Loebman died December 13, 1896, leaving her surviving her two children, Fred and Bertha. In February, 1899, Bertha was married to one James M. Finn, and on March 15, 1899, she died leaving no will and no child or children, either of her body or by adoption, but leaving her father, Gustav Loebman, the insured, her husband, James M. Finn, and her brother, Fred G. Loebman, surviving her. Gustav Loebman survived his daughter, Bertha, more than ten years and died on July 31, 1909, leaving him surviving his son, Fred G. Loebman, the appellee, his only surviving child and the only surviving child of his wife, Sadde. The policy of insurance in question was kept alive by the insured by the payment of all premiums accruing up to the time of his death. Letters of administration were issued to John F. Devine in the estate of Bertha Loebman Finn, deceased, on

Mutual Life Ins. Co. v. Devine, 180 Ill. App. 422.

January 11, 1910, almost ten and one-half years after her death. Proof of the death of Gustav Loebman being duly made, Fred G. Loebman made claim to the whole of the amount due on the policy of insurance and Devine, as administrator of the estate of Bertha Loebman Finn, demanded of the insurance company one-half of the amount so due. The insurance company paid to Fred G. Loebman one-half of the fund due on the policy and filed a bill of interpleader in the Circuit Court as to the other one-half, and made Fred G. Loebman and John F. Devine, administrator of the estate of Bertha Loebman Finn, parties defendant. The defendants interpleaded and the insurance company was discharged out of court upon its depositing with the clerk of the court the sum of $1,330.50, which was one-half of the amount due on the policy. The court found that Fred G. Loebman was entitled to the money so deposited with the clerk and so decreed. This appeal presents for review the correctness of that finding and decree.

The controversy centers around what construction should be placed on the clause in the policy above quoted, having particular reference to whether the term ''children,'' as there used, means the children who are living at the time the policy matures, or, in other words, those who survive the insured, or means all the children of the insured and his wife, Sadde, who were alive at the death of Sadde, regardless of whether they survived the insurer or not.

Policies of life insurance, like other contracts, must be construed according to the law of the place where they are made. If it is not known where a contract is made, then the common law must be applied in such construction. If the place of the making of the contract is known and the contract is being construed by the courts of another state, in the absence of averment and proof of what the law of the place of the contract is it will be presumed that the common law is in force there. *Forsyth v. Barnes*, 228 Ill. 326; *Scholten v.*

*Barber,* 217 Ill. 148.    There is nothing in this record
on which a finding could be predicated as to where
this contract of insurance was in fact entered into.
The application appears to have been signed in Penn-
sylvania.    The policy appears to have been signed by
the officers of the company in the state of New York.
The application contains the provision ''that it will
constitute no contract of insurance until a policy shall
first have been issued and delivered by the said com-
pany and the first premium thereon actually paid.
The policy provides that while the first premium is
made payable in New York the same may be made,
at the pleasure of the company, to authorized persons
at other places, and there is no proof in the record
where the policy was in fact delivered or the first
premium in fact paid; neither are the laws of any state
proven.    This contract must, therefore, be construed
according to the rules of the common law.

At the common law, contracts must be so construed
as to carry into effect the real intent and understand-
ing of the parties.    If that intent and understanding
is sufficiently apparent, effect must be given to it, even
if in so doing violence is done to the language em-
ployed, for greater regard is to be given to the clear
intent of the parties than to any particular words
used.    *Dowiat v. People,* 193 Ill. 264.    The intention
of the parties must be ascertained from the words em-
ployed, the connection in which they are used and the
subject-matter of the contract.    *Hayes v. O'Brien,* 149
Ill. 403.

In construing a contract the court will, if necessary,
put itself in the place of the parties and read the con-
tract in the light of the objects they had in view and
the circumstances surrounding them at the time it was
made, so as to be able to understand the language em-
ployed in the sense intended by them.    *Street v. Chi-
cago W. & S. Co.,* 157 Ill. 605; *Nash v. Classen,* 163
Ill. 409, affirming 55 Ill. App. 356; *Burgess v. Badger,*
124 Ill. 288.

The scope and end of every matter covered by the contract is to be considered and such construction will be adopted as will satisfy these, because to satisfy scope, end and purpose of the contract is to satisfy the intent of the parties. *Consolidated Coal Co. of St. Louis v. Peers,* 166 Ill. 361.

In contracts of life insurance proper, where the insured and the insurance company are the contracting parties, the intent of the insured as to who the beneficiary shall be is the intent of all concerned. Insurance companies leave that matter to the determination of the insured and the beneficiaries are often not yet *in esse,* are too young to know or understand the transaction, or if old enough to understand are not consulted about it. It is a matter of common knowledge that in a very great majority of cases, life insurance is purchased by the insured because of his laudable desire to leave, when he dies, to those persons who are the natural objects of his love, care and bounty an amount of money larger than he could otherwise do, and to thereby decrease to that extent the chance of his dependent wife, child or other relative becoming a public charge or in want of the necessities of life.

In the case at bar, the insured at the time he made application for the policy in question was the father of one child, then about four months old. He designated his wife as the beneficiary, and in answer to the question in the application, "If for the benefit of the wife of the person proposed for insurance, state precisely whether it shall be paid to her children, to his children or to the children of the two, if she be not living at its maturity," he replied, "To the children of the two." On the strength of the directions so given the company issued its policy payable to the wife, "if living and if not, to their children or their guardian for their use." Nowhere in the application or policy is there any suggestion that under any circumstances any part of the fund should be paid to the heirs, administrators or

representatives of any deceased child. In fact, there is no suggestion concerning deceased children. The entire stipulation is in regard to the living. Taking in connection with the language employed the well-known fact that life insurance is purchased for the benefit of the living and not the dead, we feel that it was clearly the intention of the insured to have the insurance money paid to the children who should be alive at the time the policy should mature, and that for that reason, irrespective of all other considerations, the policy should be so construed.

Again, the policy being applied for and issued when the insured had but one child the fact that the term "Children" is used, both in the application and in the policy, indicates that the same was used to designate a class of persons, as distinguished from particular individuals. The class of persons so designated being the children of Gustav and Sadde Loebman. *U. S. Trust Co. v. Mutual Ben. Life Ins. Co.,* 115 N. Y. 152. How many persons should constitute that designated class and who they would be, could not be known until the policy matured, for while the number of persons who should constitute that class could not increase after the death of Sadde, it might be decreased. In this case, it was decreased by the death of one who, if she had lived, would, under the designation "their children," have participated in the distribution of this fund. When by the terms of a will a fund is given to a class of persons, it is held by what we understand to be an unbroken line of authorities that the determination of who belong to the class and who consequently are entitled to participate in the distribution of the fund is postponed until the death of the testator, and the fund goes to the survivor or survivors of the designated class. *Lancaster v. Lancaster,* 187 Ill. 540; *McCartney v. Osburn,* 118 Ill. 403; *Rudolph v. Rudolph,* 207 Ill. 266; *Kellett v. Shepard,* 139 Ill. 433. We are aware that there is a line of authorities hold-

ing that contracts of insurance are not to be construed by the same rules applicable to the construction of wills. There are also a number of cases in various jurisdictions in the United States holding exactly the contrary, as to the parts of life insurance contracts relating to the distribution of the fund. These last mentioned cases are, in our opinion, the best reasoned, and where followed, tend in many cases to prevent a distortion of the. real purpose of life insurance contracts. Some of these cases follow: *Duvall v. Goodson,* 79 Ky. 224-227; *Small v. Jose,* 86 Me. 120; *Russel v. Russel,* 64 Ala. 500; *Rawson v. Beach,* 13 R. I. 151; *Continental Life Ins. Co. v. Webb,* 54 Ala. 688.

It cannot be denied that the disposition of life insurance funds arising from a straight life insurance policy is in many respects strikingly akin to a testamentary disposition of property. The will of the insured, like the will of the testator, when ascertainable and not in conflict with positive law, usually governs. The distribution does not take place until the death of the insured in the one case and the death of the testator in the other. The fund usually goes to persons bound to the insured in the one case and the testator in the other by ties of consanguinity or affinity. The disposition of the fund is governed by the arbitrary wish of the party directing it. In case no lawful disposition of it is made, it usually goes to the estate of the insured in the one. case and of the testator in the other as intestate property. It is usually a gratuity, although it may be made in fulfillment of a recognized legal liability or obligation. Again, courts are usually called upon to construe life insurance contracts under the same circumstances under which they are called upon to construe wills, that is, after the death of the person whose intent is to be ascertained. Comparisons might be multiplied, but we think enough has been said to indicate that to the average mind what would be potent in determining what was the intent in the one case would be likewise potent in the other.

No sufficient reason can be urged, it seems to us, why the real intention of the insured, the real thing on which his mind was centered when he made his insurance contract, should not be ascertained by the same rules by which the real intention of a testator, the real thing on which his mind was centered when he made his will, is determined. If this contract be so construed, and we think it must be, it must be held, and we do hold, that when "the children" of the insured and his wife, Sadde, were designated in this insurance contract as beneficiaries, it was intended to describe a class, and that it was done in view of the law, and with the understanding and intention, that those who fulfilled the description of child or children of Gustav and Sadde Loebman who were *in esse* when the policy matured; or, in other words, who survived the insured, should receive the fund. *U. S. Trust Co. v. Mutual Ben. Life Ins. Co.*, 115 N. Y. 152. Appellee, Fred G. Loebman, being the only child of the insured and Sadde Loebman who survived the insured and who, therefore, was the only person who fulfilled the description of the class of beneficiaries named, was and is entitled to the whole fund. A construction of this contract that would result in a holding by this court that the insured intended to and did contract with the insurance company that he would from year to year during his life time pay of the money that would otherwise belong to his estate and descend at his death to his heirs, a premium on a life insurance policy to be eventually paid in part to the surviving husband of a daughter that was not born until nearly a year after the contract was made, and who died more than ten years before the policy matured and to the exclusion of his own flesh and blood, would be so obnoxious to the dictates of reason and natural justice and out of joint with the operation of the average human mind as not to be tolerated. There is nothing in the language employed in the contract requiring such an interpre-

tation, neither is there any precedent for such a construction in the decisions of the courts of this state.

We are cited to the case of *Glanz v. Gloeckler*, 104 Ill. 573, as announcing the doctrine that the term children, used in this insurance contract in designating beneficiaries, should be construed to give to each child of Gustav and Sadde Loebman, who was alive at any time after the death of Sadde, a vested interest in the fund that would descend to the heir of such child should he or she die before the policy matured. The facts in that case were very different from the facts in the case at bar. There the policy was made payable to a definite person, by name, and in case of her decease, then to her "executors, administrators and assigns." On that state of facts the court very properly held that, as the named beneficiary was dead when the policy matured, the fund went to her legal representatives, as expressly directed by the terms of the policy. The case of *Mutual Life Ins. Co. v. Allen*, 212 Ill. 134, cited by appellant to show that Bertha Loebman Finn had a vested right to the fund here in dispute, is also entirely different on the facts from the case at bar. In that case, the wife of the insured was named as beneficiary and the policy itself was delivered to her. The insured died leaving her surviving. Sometime after the issuance of the policy and the death of the insured, the beneficiary had delivered the policy to the agent of the company, as security, for a loan of $10, which amount, with accrued interest, she claimed to have tendered to the agent, who refused to accept it and retained the policy. The suit was begun by the beneficiary against the insurance company on the policy, so hypothecated to the agent of the company and still in his possession. The court there holds, in substance, that one named as a beneficiary in a policy of life insurance and to whom the policy has been delivered has a vested interest in the fund. In the case of *Johnson v. Van Epps*, 110 Ill. 551, the policy was payable to one

Judith Johnson, the wife, or to the legal representatives of the insured. The wife died before the death of the insured and the original policy was surrendered and a new one issued to one Elizabeth Van Epps, in consideration of her promise to pay the future assessments on the policy and furnish him a home. After the death of the insured a controversey arose between the legal representatives of the insured and Elizabeth Van Epps. The legal representatives claimed they had vested rights under the first policy. This point was not decided, but a judgment in favor of Elizabeth Van Epps and against the legal representatives of the insured who were named in the first policy as beneficiaries in case of death of Judith Johnson, was sustained on other grounds. The case of *Central Bank of Washington v. Hume,* 128 U. S. 195, also cited by appellants, arose after the rights of a surviving named beneficiary had in fact matured by the death of the insured, and the construction adopted was based on certain statutory provisions not involved in the case at bar.

All of these cases are so different on the facts as to be of no value as authorities in the case at bar.

Counsel for appellant has called attention to *Walsh v. Mutual Life Ins. Co.,* 133 N. Y. 408, and *Fidelity Trust Co. v. Marshall,* 178 N. Y. 468 (in which last case three out of seven judges of the court dissent), in which it is held that under facts similar to the case at bar all children surviving the mother have a vested interest in the fund which attaches immediately on her death, and which in case they die even before the policy is matured will descend to their personal representatives. We do not consider that these cases announce the common law. They are predicated on the case of *U. S. Trust Co. v. Mutual Ben. Life Ins. Co.,* 115 N. Y. 152. The provisions in the policy of insurance there involved were, as to beneficiaries, almost

identical with the provisions here under considera-
tion. There, as here, the wife was made the bene-
ficiary in a policy on the life of the husband, and in
case of her death before the death of her husband, the
insured, then the amount should, after his death, be
payable to their children, or to their guardian, if under
age. In that case, the wife died, before her husband,
leaving three children. Then two of those children
died, one leaving children and the other leaving a hus-
band but no children. Then the insured died, leaving
one child and three grand children his only issue. The
insurance company then paid one-third of the fund to
the surviving child of the insured, one-third to the ad-
ministrator of the child that had died leaving no chil-
dren, and one-third to the guardians of the three
grand children. The controversy arose over the con-
tention made by the guardians of two of the grand-
children that the administrator of the child who had
died leaving no children was not entitled to the one-
third that had been paid to him. It was there con-
tended that the moment the policy issued the interest
of the wife and her children vested under the pro-
visions of the statute of New York. The Court of
Appeals thereupon proceeded to construe the provi-
sions of that policy and the rights of the parties in the
light of the statutes of that state, and in so doing gave
expression to the views afterwards adopted in *Walsh
v. Mutual Life Ins. Co.* and in *Fidelity Trust Co. v.
Marshall, supra.* The court then proceeded to an-
nounce what we understand to be its view of what the
common-law rule is in the following language: ''If,
however, we assume that we are wrong in this con-
struction of the policy, then upon the death of Mrs.
Finn (the mother) the policy was payable to her chil-
dren *as a class* and those of the class would take *who
were in being at the time when the policy became pay-
able,* and in no event could grand children be included

in the class." So far as these three New York cases relate to rights existing under the New York statutes, they are not helpful in determining what the common law is, and so far as the common law rule is announced in the *Trust Company* case, *supra,* it is in accord with our view as above expressed.

There are no decided cases in the court of last resort in this state that we have been cited to or can find that are closely in point. Perhaps the case nearest in point in this state is *Coyne, Stone & Co. v. Jones,* 51 Ill. App. 17, in which the court says, on page 28 of the opinion:

"So far as the naming of a beneficiary is concerned, such a certificate partakes of the nature of a will, and without consideration, like a will, is a mere declaration of a purpose to bestow a bounty which, until death, vests no rights of property in the legatee or beneficiary."

In other jurisdictions various courts have held, in effect, that the word children, as used in the policy here under consideration, means children living at the time the policy matures. The following are some of those cases: *Ryan v. Rothweiler,* 50 Ohio St. 595; *Continental Life Ins. Co. v. Webb,* 54 Ala. 688; *Brown's Appeal,* 125 Pa. St. 303; *Entwistle v. Travelers' Ins. Co.,* 202 Pa. St. 141. There is no doubt that the beneficiaries named in the policy of insurance have vested rights in the fund. We do not understand that any one in this case denies that proposition. The converse is also true. Only those named as beneficiaries have such vested rights. In the view we take of the case, appellant's intestate, not having survived her father, the insured, was not a beneficiary and never had a vested interest in the fund, while appellee, who was the only child of the insured and his wife, Sadde, who was alive at the death of the insured, was the sole representative of the class described in the policy as "children," and was entitled to the whole fund.

The question whether the evidence offered by appellee before the master in chancery, and excluded by

him, relative to certain statements the insured made years after the policy was issued and after the death of appellant's intestate, tending to show his understanding to be that appellee was the sole beneficiary under the policy in question, was admissible, is, in the view we have taken of this case, a purely academic question which has not entered into the determination of this case, and which we do not feel called upon to decide. Being fully satisfied that the construction of the contract and the determination of the rights of the parties by the Circuit Court was in all respects free from error, the decree of that court is affirmed.

*Decree affirmed.*