Mildred M. Orrico, as Administrator of Estate of John Michael Mazzolini, Deceased, Plaintiff-Appellee, v. The Prudential Insurance Company of America, Defendant.

The Prudential Insurance Company of America, Counterplaintiff, v. Mildred M. Orrico, as Administrator of Estate of John Michael Mazzolini, Deceased, and Rosemary Gross, Counterdefendants.

Rosemary Gross, Counterdefendant and Counterplaintiff-Appellant, v. Mildred M. Orrico, as Administrator of Estate of John Michael Mazzolini, Deceased, Counterdefendant-Appellee.

Gen. No. 46,598.

First District, Third Division.

June 22, 1955.

Rehearing denied July 15, 1955.

Released for publication July 15, 1955.

Arnold M. Flamm, of Chicago, for counterdefendant and counterplaintiff-appellant.

Joseph B. Gilbert, of Chicago, for appellee; Joseph R. Orrico, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiff, as administratrix of the estate of John Michael Mazzolini, brought suit to recover the proceeds of a policy of group life insurance issued by The Prudential Insurance Company of America, naming Rosemary Mazzolini, daughter, as beneficiary. The Insurance Company filed a countercomplaint of interpleader admitting liability, alleging that there are rival claimants and that the Insurance Company is willing to pay under order of court such person as may be lawfully entitled to the proceeds. Rosemary Gross, counterdefendant, was made a party defendant in the countercomplaint of interpleader. Pursuant to an order of court the proceeds of the policy were deposited with the Clerk of the Court and the Insurance Company was dismissed from the case. The chancellor found that plaintiff as administratrix was entitled to the funds deposited with the Clerk and entered a decree accordingly. Rosemary Gross, counterdefendant, appeals.

The evidence, briefly outlined, was as follows. About April 7, 1950, John Michael Mazzolini, the insured,

was employed by the Jack Tar Court Motel at Galveston, Texas. January 5, 1951, he executed an "application and employment agreement" naming Miss Rosemary Mazzolini as beneficiary and describing her relationship to him as "daughter, residing at 719 No. 6th Avenue, Maywood, Illinois." He also described his marital status as "widower."

July 16, 1951, the insured signed a "group insurance enrollment and record card," upon which the policy in question was issued, stating he was "widowed" and directing the death benefits to be paid to Rosemary Anne Mazzolini, daughter, residing at 719 North Sixth avenue, Maywood, Illinois.

The insured died February 28, 1953, at Galveston, Texas, a bachelor.

The plaintiff is a sister and sole heir at law of the insured. Her maiden name was Marie Mildred Mazzolini. The counterdefendant, Rosemary Gross, is a second cousin of the insured. At birth she was named Rose Mary Riemensperger. From the time of her birth in 1921 until 1952, except for the period between 1937 and 1940, the counterdefendant, Rosemary Gross, resided at 719 North Sixth avenue, Maywood, Illinois. After her marriage in 1940 Rosemary Gross lived with her husband at various places while he was in the military service until 1946 when she moved back into the premises at 719 North Sixth avenue, Maywood. In that year the insured visited Rosemary Gross. This was the last time she saw him. When Rosemary Gross was a young child, the deceased frequently visited her home in Maywood. During this period he made her two coats and on several occasions he gave her gifts. He never lived at her home.

Three of her neighbors testified in substance that when Rosemary Gross was a child they saw the deceased during visits at her home and that he displayed great affection for her. One of these witnesses testified that when Rosemary was three or four years old the

deceased held her in his lap and said, "This is my little girl."

The theory of the counterdefendant, as stated in her brief, is that although there is no person having the name of Rosemary A. Mazzolini, and although John Michael Mazzolini had no daughter, the undisputed evidence offered on behalf of the counterdefendant was such as to make mandatory a finding by the chancellor that the counterdefendant was the person intended by the insured to be the beneficiary of the insurance policy in question.

The counterdefendant contends that the only issue presented was the intention of the insured with respect to the designation of the beneficiary in the policy in controversy and that once it is established that there is no person who corresponds to the description contained in the designation of the beneficiary then the intention of the insured may be ascertained through the use of extraneous evidence. In support of her position counterdefendant cites Supreme Council Royal Arcanum v. Huckins, 166 Ill. App. 555; Mutual Life Ins. Co. of New York v. Devine, 180 Ill. App. 422; Hogan v. Wallace, 166 Ill. 328; Edgar v. Rhode Island Ins. Co. (Tex. Civ. App.), 181 S.W.2d 824; Sims v. Missouri State Life Ins. Co., 223 Mo. App. 1150, 23 S.W.2d 1075; Wimbush v. Lyons, 203 Ga. 273, 46 S.E.2d 138; Equitable Life Assur. Soc. of United States v. Hughes, 308 Mich. 594, 14 N.W.2d 508; and Woodson v. Provident Life & Accident Ins. Co. (La. App.), 5 So.2d 387.

In Supreme Council Royal Arcanum v. Huckins, the insured in designating a new beneficiary after the death of his wife named his affianced wife. The court held that an incorrect description will not defeat a recovery upon the part of an eligible person so incorrectly described. In Mutual Life Ins. Co. of New York v. Devine, the insurance policy named the wife of the insured as beneficiary and if she should not be living

319

then the children should receive the insurance money. The question there presented was whether the term "children" meant the children who were living at the time the policy matured or all the children of the insured and his wife who were alive at the death of the insured. In Hogan v. Wallace, the beneficiary named was "Mrs. Kate Hogan, my wife." The insured's wife's name was Ellen B. Hogan. The court concluded that the insured intended the proceeds of the policy to go to the insured's wife. In Edgar v. Rhode Island Ins. Co., the insurance policy in question was payable to "Mrs. A. Edgar, mother, Address: Hemphill, Texas." The insured's mother, who resided at Hemphill, was Molly Edgar. The court decided that the insured intended to leave the proceeds of the policy to his mother and not to an aunt named Mrs. A. Edgar, also a resident of Hemphill. In Sims v. Missouri State Life Ins. Co., and Wimbush v. Lyons, the rival claimants were the wives and paramours of the respective insureds. In Equitable Life Assur. Soc. of United States v. Hughes, the beneficiary designated was the wife, Blanche Shears. The insured's wife was named Corinne Shears. The insured's sister was Blanche Shears Hughes. The court held that the wife was the intended beneficiary. And in Woodson v. Provident Life & Accident Ins. Co., a policy was payable to "Adrona Woodson, wife." The insured had no wife and the court awarded the proceeds to his sister Adorilla Woodson. In that case there was evidence tending to prove that the insured had frequently told his sister that he had named her as beneficiary.

We think that all of the cases cited upon which the counterdefendant places reliance are readily distinguishable from the present case. This is not a case where there are two persons that answer the same name or description, nor a case where the insured actually had a daughter who was incorrectly described.

Nor is it a case of a misdescription of an existing beneficiary. The undisputed evidence clearly shows that the insured knew the counterdefendant's correct name before and after her marriage to Gross.

It is uncontroverted that Rosemary Gross never used the name of Rosemary Mazzolini, and that she was never known among her friends and associates as Rosemary Mazzolini. Moreover, it is admitted that the insured never had a wife, common law or legal.

Counterdefendant argues that the statements by the insured as to the beneficiary's address should be accorded great weight in resolving an ambiguous designation. In this case, however, the evidence shows that the plaintiff also resided at the same address, 719 North Sixth avenue, Maywood, Illinois, for many years prior to and until 1918. Counterdefendant says that "if the insured were to properly carry out his deception (or fantasy, or delusion, or illusion), he would naturally have changed the last name of his daughter to correspond with his own." There is no evidence tending to prove that the insured was mentally ill. Plaintiff's counsel during the oral argument suggested that the insured's motive for declaring himself a widower and naming a nonexisting beneficiary as his daughter was to obtain exemptions under the federal income tax law. Whatever the insured's motives may have been, we think the evidence was sufficient to support a finding that the beneficiary named in the policy here in question though nonexistent was deliberately named by the insured. Hence cases defining latent ambiguities have no application.

In Novotny v. Acacia Mut. Life Ins. Co., 287 Ill. App. 361, the wife of the insured brought suit. The children of the insured by a prior marriage claimed the fund and the insurance company filed a countercomplaint in interpleader proceedings. When the policy was issued Novotny designated his first wife as beneficiary. She died leaving two children. Under the provisions

of the policy for a change of beneficiary the insured then designated the American State Bank, Berwyn, Illinois, as trustee. When he married a second time the insured made a change of beneficiary and designated the First American National Bank and Trust Company of Berwyn as trustee under Trust 208. These changes of beneficiary were endorsed upon the policy by the company. Subsequently the last named beneficiary went into the hands of a receiver and ceased doing business. Thereupon, the insured, acting under the power reserved to him in Trust Agreement 208, in writing released the trustee from all obligations under the trust agreement and canceled it. He failed, however, to designate a successor beneficiary and died intestate. This court said, at page 364:

"We find no cases in this State presenting the question as to who shall collect where no beneficiary is designated and the policy does not cover such a contingency. In Clarke v. Schwarzenberg, 162 Mass. 98, where the designation of the beneficiary was held invalid, it was held that the executrix was entitled to collect the insurance money. This was followed in the subsequent case of Boyden v. Massachusetts Masonic Life Ass'n, 167 Mass. 242, where it was again held that where no beneficiary is effectively designated the administrator of the estate is entitled to collect the insurance money."

We think the rule announced in the case last cited is decisive of the issue here since in our view no beneficiary is effectively designated.

We have considered the other points urged and the authorities cited in support thereof but in the view we take of this case it is unnecessary to discuss them.

For the reasons stated, the decree is affirmed.

Decree affirmed.

KILEY, P. J. and FEINBERG, J., concur.